GINSBURG, Circuit Judge:
Dr. Robert Sperrazza was convicted of three counts of tax evasion, in violation of 26 U.S.C. § 7201 and two counts of structuring a currency transaction, in violation of 31 U.S.C. § 5324(a)(3). The district court sentenced him to 36 months imprisonment and ordered him to forfeit $870,238.99. Sperrazza argues the conviction must be set aside because the structuring counts of the indictment are defective and, if the conviction is not set aside, the order of forfeiture must be vacated because it violates the Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States. We disagree with both arguments and affirm the conviction and the order of forfeiture.
I. Background
Pursuant to 31 U.S.C. § 5313(a), a “domestic financial institution” is required to file a report with' the Secretary of the Treasury whenever it “is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount” greater than $10,000. See 31 C.F.R. § 1010.311. The “currency transaction reports” generated by financial Institutions are used by law enforcement to detect criminal activity. See United States v. Lang, 732 F.3d 1246, 1247 (11th Cir.2013). Because, however, the reporting obligation is borne by the financial institution *1117 and not by its customer “the reporting requirement could be evaded through the simple expedient of dividing large cash transactions into amounts small enough not to trigger it.” Id. “To prevent that and similar end runs,” id., the law prohibits a person from “structuring” a transaction with a financial institution “for the purpose of evading the reporting requirements,” 31 U.S.C. § 5324(a).
Sperrazza and two other doctors had an anesthesiology practice in Albany, Georgia. The practice outsourced its billing operations to Physicians Professional Management (PPM), which collects and processes payments from patients and insurance companies. PPM ordinarily deposits the checks it receives from patients, but Sper-razza instructed PPM to mail to him each week any checks received from his patients. The bundle of checks Sperrazza received each week from PPM usually totaled several thousand dollars and on at least one occasion the checks totaled more than $10,000.
Approximately every ten days Sperrazza cashed the checks he received from PPM at a bank in Albany. Although Sperrazza and his practice had several accounts with the bank, he always cashed the checks rather than depositing them into an account. Ordinarily he cashed between 20 and 50 checks per visit; the checks often totaled more than $9,000 but never exceeded $10,000. In 2008, for example, Sperraz-za cashed checks on 36 days, on 24 of which the checks totaled between $9,000 and $10,000. According to one of his partners, Sperrazza had told him he never cashed checks totaling more than $10,000 at one time because he wanted “to avoid any reports or anything that would involve ... the regulatory or IRS authorities.”
Sometimes Sperrazza also deposited cash into one of his accounts at the bank before he cashed the checks he had received from PPM. The cash deposits, like the checks, often totaled more than $9,000 without ever exceeding $10,000. In 2008, Sperrazza deposited cash on 18 days, on 14 of which he deposited between $9,000 and $10,000.
In December 2008 law enforcement officials searched Sperrazza’s home in connection with an unrelated criminal investigation. The officers discovered there approximately $24,000 in cash, some of which was in an envelope labeled “clean.” Sperrazza’s accountant subsequently informed the IRS that Sperrazza had un-derreported his income by failing to disclose payments he had received from his patients. Sperrazza later filed amended tax returns and paid the tax owed for 2005, 2006, and 2007.
In 2012 a grand jury returned a five-count indictment against Sperrazza. The first three counts allege he evaded income tax in 2005, 2006, and 2007, respectively; the fourth and fifth counts allege he structured a currency transaction in 2007 and in 2008, respectively, in amounts totaling $870,238.99. The Government also notified Sperrazza it would seek an order requiring him to forfeit that amount.
In 2013 a jury found Sperrazza guilty of all five counts. In 2014 Sperrazza filed a motion to set aside the jury’s verdict, in which he argued for the first time the indictment is defective. The district court denied the motion as untimely. It then sentenced Sperrazza to concurrent terms of 36 months imprisonment for each count and ordered him to forfeit the $870,238.99 sought by the Government.
II. Analysis
On appeal Sperrazza renews his arguments that the indictment is defective and the order of forfeiture is excessive.
*1118 A. Indictment
Sperrazza first contends we must set aside his conviction because counts four and five of the indictment, which charge him with structuring a currency transaction in 2007 and in 2008 respectively, fail to state an offense and are factually inaccurate. Before turning to the merits of Sperrazza’s two claims, we must decide whether they are subject to appellate review and, if so, under what standard of review.
1. Standard of review
Sperrazza first asserted the indictment is defective in a motion he filed ten months after his trial and conviction. The scope of our review is governed by Federal Rule of Criminal Procedure 12, which identifies the motions a defendant must file before trial and the consequences of filing an untimely motion. A revised version of Rule 12 took effect after Sperrazza filed his appeal but before we heard argument.
The old version of Rule 12(b), which was in effect prior to December 1, 2014, distinguished two types of claims that an indictment is defective.[1] The first type — claims the indictment “fails to invoke the court’s jurisdiction or to state an offense” — could be raised at “any time while the case is pending.” Id. 12(b)(3)(B). In a case to which the old rule applies, therefore, we are obligated to consider an argument the indictment fails to state an offense even if the defendant raises the argument for the first time on direct appeal. See United States v. Izurieta, 710 F.3d 1176, 1179 (11th Cir.2013) (holding the old version Rule 12(b)(3)(B) requires us to “raise sua sponte the jurisdictional issue of whether the indictment sufficiently alleges an offense in violation of the laws of the United States provided the mandate has not issued on direct appeal”).
The second type of claim created by the old version of Rule 12 is that the indictment is defective for any reason other than those of the first type. Type two claims had to be raised by the pre-trial deadline set by the district court and, pursuant to Rule 12(e), a defendant “waives” any type two claim not raised by that deadline. See United States v. Pacchioli, 718 F.3d 1294, 1307 (11th Cir.2013) (“[A] defendant must object before trial to defects in the indictment, such as a lack of factual specificity, and the failure to do so waives appellate review”). An argument that has been waived may not be reviewed on appeal. See United States v. Lewis, 492 F.3d 1219, 1222 (11th Cir.2007) (en banc). If the old version of Rule 12 applies to this case, then under Rule 12(e) we are barred from reviewing Sperrazza’s claim the indictment is factually inaccurate unless there is “good cause ... [to] grant relief from the waiver.”
Under the new version of Rule 12(b)(3), which took effect December 1, 2014, all claims that an indictment is defective “must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be deter *1119 mined without a trial on the merits.”[2] The Advisory Committee Notes accompanying the new rule explains it was “amended to remove language that allowed the court at any time while the case is pending to hear a claim that the ‘indictment or information fails ... to state an offense/ ” which “was previously considered fatal whenever raised and was excluded from the general requirement that charging deficiencies be raised prior to trial.”
If applicable to Sperrazza’s appeal, the new rule renders untimely his motion arguing the indictment fails to state an offense — unless, that is, the “basis for the motion” was not “reasonably available” before trial or it could not have been “determined without a trial on the merits.” Rule 12(b)(3)(2015). If the motion was untimely, then the argument is forfeit, and we must review its denial by the district court only for plain error, not de novo. See Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (holding the plain-error standard applies to “errors that were forfeited because not timely raised in district court”).
Although the amendment to Rule 12 is detrimental to Sperrazza’s cause in one respect, it works to his advantage in another. Under the old version of the rule, Sperrazza waived his claim the indictment is factually inaccurate because he did not raise it before trial, and the argument is not subject to appellate review unless Sperrazza shows there is “good cause” for relief from the waiver. Rule 12(e)(2013); see Pacchioli, 718 F.3d at 1307. The new version of Rule 12, however, makes no mention of “waiver.” The committee’s notes explain the word was omitted “to avoid possible confusion” because “Rule 12(e) has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion.” Sperrazza’s claim the indictment is factually inaccurate is therefore subject to review for plain error under the new rule even if he does not show “good cause” for failing to present the claim before trial.
The chart below illustrates some of the differences between the old and new versions of Rule 12:
*1120 Type of claim not timely raised before trial
Court lacks jurisdiction Indictment fails to state an offense Indictment is defective for any other reason, e.g., factual inaccuracy
Before Dec. 1, 2014 Review de novo at any time until mandate issues on direct review Not subject to appellate review except “for good cause” shown
Version of Rule 12
As of Dec. 1, 2014 Review de novo at any time until mandate issues on direct review Review only for plain error unless the “basis for the motion” was not “reasonably available” before trial or it could not have been “determined without a trial on the merits”
Having outlined the difference between the two versions of Rule 12, we consider which version applies to this appeal.
The order of the Supreme Court amending Rule 12 provides the amendment “shall take effect on December 1, 2014, and shall govern in all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings then pending.” Proposed Amendments to the Federal Rules of Criminal Procedure, 572 U.S. -(Apr. 28, 2014); see also 28 U.S.C. § 2074(a) (describing the process by which the Supreme Court transmits to the Congress amendments to the federal rules of procedure). This same provision “has been submitted by the Supreme Court [to the Congress] with nearly all amendments to the Federal Rules of Criminal Procedure.” United States v. Woods, 399 F.3d 1144, 1147 (9th Cir.2005). In its original brief, the Government relied upon the old version of Rule 12 for its waiver argument but neither party discussed which version of the rule applies to this case. Because the jurisdiction of the court was implicated, we ordered the parties to submit supplemental briefs addressing whether this appeal is a “proceeding” that was pending on December 1, 2014 and, if so, whether it would be “just and practicable” to apply the new rule. Although we have previously applied the old version of Rule 12 to two appeals decided after December 1, 2014, in neither case did we consider whether we were required to apply the new version of the rule. See United States v. Bailey, 778 F.3d 1198, 1201 n. 1 (11th Cir.2015); United States v. Moran, 778 F.3d 942, 963-64 (11th Cir.2015). In any event, whether it is “just *1121 and practicable” to apply the new version of a rule “is necessarily a case-by-case consideration.” United States v. Duke, 50 F.3d 571, 575 (8th Cir.1995).
In their supplemental briefs, the parties agree this appeal is a “proceeding” that was pending on December 1, 2014 within the meaning of the Supreme Court’s order. A “proceeding” may be defined as “ ‘any procedural means for seeking redress from a tribunal or agency.’ ” United States v. Moreno, 364 F.3d 1232, 1235 (11th Cir.2004) (quoting Black’s Law Dictionary 1221 (7th ed.1999)). Indeed we have used this definition in interpreting an identical order of the Supreme Court amending the Federal Rules of Criminal Procedure. See id. Because a direct appeal is a “proceeding,” the new version of Rule 12 governs an appeal filed before December 1, 2014 but decided after that date “insofar as just and practicable.” See United States v. Anderson, 783 F.3d 727, 740-41 (8th.Cir.2015) (applying the new version of Rule 12 to an appeal filed before December 1, 2014 but decided after that date); United States v. Soto, 780 F.3d 689, 700-01 (6th Cir.2015) (same); but see United States v. Smith, 600 Fed.Appx. 991, 994 n. 3 (6th Cir.2015) (applying the old version of Rule 12 to an appeal decided after December 1, 2014 because “the district court’s final judgment was entered ... well before the effective date of the Rule 12 amendments”).
The parties disagree about whether it would be “just and practicable” to apply the new version of Rule 12 to this case. Sperrazza argues it would be unjust because it would render untimely his argument the indictment fails to state an offense even though the old version of the rule was in effect when he first raised the argument in his motion for a new trial and, under that version, the argument was timely. See Izurieta, 710 F.3d at 1179.-Under the new version of the rule, Sper-razza’s argument would have been timely only if he had raised it before trial, which was well before the new rule had even been proposed.
We agree with Sperrazza that it would not be “just” to change the legal consequence of his failure to raise an argument in June 2013 based upon an amendment that was proposed in April 2014 and took effect in December 2014. See United States v. Bowler, 252 F.3d 741, 746 (5th Cir.2001) (holding it would not be “just and practicable” to apply the new version of a Federal Rule of Criminal Procedure because the defendant’s motion would be considered timely under the old rule but untimely under the new rule). We will therefore apply the old version of Rule 12 to Sperrazza’s claim the indictment fails to state an offense and hence we review that claim de novo.
We will, however, apply the new version of the rule to Sperrazza’s claim the indictment is factually inaccurate because it would not be unjust or impractical to do so, and neither party argues it would be. Sperrazza’s argument the indictment is factually inaccurate was untimely under both versions of the rule, but under the new version it is forfeit rather than waiyed. We will therefore review for plain error Sperrazza’s claim the indictment is factually inaccurate.
2. Defects in the indictment
a. Failure to state an offense
Sperrazza argues the indictment fails to charge him with structuring a currency transaction in violation of 31 U.S.C. § 5324(a) because it does not allege he had a “cash hoard” in excess of $10,000 that he divided into two or more amounts of less than $10,000. To be sure, some prosecutions for structuring involve allegations the *1122 defendant structured a single cash hoard. See, e.g., Lang, 732 F.3d at 1248 (explaining a defendant may be convicted of structuring if, for example, he receives $24,000 and deposits the money into his bank account in amounts of $9,000, $9,000, and $6,000 on three different days for the purpose of evading the reporting requirement).
The Government argues that dividing a sum the defendant has in hand is not the only way to violate the statute. It relies upon a regulation promulgated by the Department of the Treasury, which provides that structuring “includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums.” 31 C.F.R. § 1010.100(xx). Structuring may also involve “a transaction, or series of currency transactions at or below $10,000.” Id.; see United States v. Sweeney, 611 F.3d 459, 470 (8th Cir.2010) (holding “the Treasury regulations accurately describe the offense of structuring a transaction”); United States v. Van Allen, 524 F.3d 814, 821 (7th Cir.2008) (defining “structuring” as “altering the form of a transaction in order to avoid activating the bank’s duty to file a currency transaction report” and noting this definition “meshes well with [the definition] in the Treasury regulation” (quotation marks omitted)).
Sperrazza contends our decision in Lang requires the Government to allege in the indictment he had cash on hand in excess of $10,000. In Lang the Government asserted the defendant engaged in a series of 85 cash transactions, each of less than $10,000, for the purpose of evading the reporting requirement; the indictment charged the defendant with 85 counts of structuring. 732 F.3d at 1250-52. We held the indictment was “so defective that it does not ... charge an offense” because “[a] cash transaction involving a single check in an amount below the reporting threshold cannot in itself amount to structuring.” Id. at 1249-50 (quotation marks omitted). In other words, each count of structuring must include two or more transactions. Id. at 1249 (“When cashed checks come to the structuring dance, it takes at least two to tango”). In this case, the Government did not charge Sperrazza with a separate count of structuring in connection with every transaction he conducted. In keeping with Lang, the Government grouped into a single count a series of transactions, all of which were allegedly part of a single offense of structuring. As we said in that case, the “structuring itself, and not the individual deposit, is the unit of the crime.” Id. at 1248 (quotation marks omitted).
We have never held all the transactions that make up a single count of structuring must have originated from a single cash hoard, and Sperrazza has not pointed to any case endorsing that rule. To the contrary, two circuits have expressly rejected the contention. See Sweeney, 611 F.3d at 471 (“While breaking up a single cash transaction that exceeds the $10,000 reporting threshold into two or more separate transactions is one way of committing the offense of structuring a transaction, it is not the only way”); Van Allen, 524 F.3d at 820 (rejecting the argument “that the only method of proving structuring is to demonstrate that a defendant held a unitary cash hoard over $10,000 and then broke it up to deposit in amounts under $10,000”).
Sperrazza also relies upon a single sentence in Ratzlaf v. United States, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), which held a prior version of § 5324 required the Government to prove the defendant knew his conduct was unlawful in order to convict him of structur *1123 ing. Id. at 137, 114 S.Ct. 655.[3] Before so holding, the Court observed: “It is illegal to ‘structure’ transactions—i.e., to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a financial institution’s reporting requirement.” Id. at 136, 114 S.Ct. 655. We do not read this introductory sentence as holding there is only one way to structure a transaction. Although breaking up a sum larger than $10,000 was the form of structuring at issue in Ratzlaf, nothing in the Court’s opinion indicates it intended to provide an exclusive definition of the term. See Sweeney, 611 F.3d at 471 (referring to the definition of “structuring” in Ratzlaf as a “dictum”). In Lang we implicitly read the definition offered in Ratzlaf as exemplary, not exclusive. See 732 F.3d at 1248 (“[T]he Supreme Court has explained that the crime of structuring includes ‘breaking] up a single transaction above the reporting threshold into two or more separate transactions’ ” (quoting Ratzlaf, 510 U.S. at 136, 114 S.Ct. 655)).
Our recent decision in United States v. Aunspaugh, 792 F.3d 1302 (11th Cir.2015), is inapposite for the same reason. In that case, the defendants argued there was insufficient evidence to prove they had structured a series of transactions of less than $10,000 because they had also engaged in several transactions above the $10,000 reporting threshold. We rejected this contention because “a person who once engages in a transaction of more than $10,000 does not get a pass to structure later transactions with impunity.” Id. at 1311. In the course of rejecting the defendants’ argument, we observed: “To constitute structuring, a transaction of more than $10,000 must be broken into smaller increments, each of which typically is for less than $10,000, thus avoiding the reporting requirement.” Id. Unlike in this case, however, we were not called upon to determine whether that is the only way to structure a transaction in violation of § 5324(a). Our generic description of the offense was not tied to the facts of the case or necessary to our decision that a defendant may be convicted of structuring a series of transactions of less than $10,000 even though he also engaged in transactions of more than $10,000. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 762 (11th Cir.2010) (“Statements in an opinion ... that are not fitted to the facts ... or that are not necessary to the decision of an appeal given the facts and circumstances of the case ... are dicta” (internal quotation marks and citations omitted)). If anything, our decision in Aunspaugh is of a piece with our disposition of this case. In Aunspaugh the Government alleged the defendants received small sums of money on an ongoing basis from a fraudulent scheme and engaged in 15 separate transactions of slightly less than $10,000 each for the purpose of evading the reporting requirement. See 792 F.3d at 1305, 1310. The Government charged the defendants with a single count of structuring that encompassed all 15 transactions of less than $10,000. Id. at 1310. That is the same approach the Government took in this case, and that we now hold is consistent with § 5324(a).
To be clear, each count of structuring must include two or more transactions that together exceed $10,000. See Lang, 732 F.3d at 1249 (“A cash transac *1124 tion involving a single check in an amount below the reporting threshold cannot in itself amount to structuring because the crime requires a purpose to evade the reporting requirement, and that requirement does not apply to a single cash transaction below the threshold”). We agree with Judge Rosenbaum that a person who divides $2,000 into four transactions of $500 each may not be charged with violating § 5324(a) because a transaction of $2,000 would not trigger the reporting requirement. See S.Rep. No. 99-433, at 22 (1986); Dissent at 1131-32. We disagree only with Judge Rosenbaum’s assertion that the statute requires the Government to prove the defendant had possession or at least “control” of more than $10,000 when he completed each individual transaction. See Dissent at 1131-32. Two examples illustrate the distinction. First, consider a defendant who has checks totaling $18,000 but decides to cash $9,000 today and $9,000 tomorrow in order to avoid the reporting requirement; there can be no question the defendant may be charged with one count of structuring in violation of § 5324(a)(3). Second, consider the defendant who has checks totaling $9,000 and knows he will receive another bundle of checks totaling more than $1,000 tomorrow; in order to avoid the reporting requirement, he decides to cash the checks totaling $9,000 today. We think the Government may charge the defendant in the second example with one count of structuring even though he did not have more than $10,000 in hand at any one time. As the Government aptly explains, the statute requires it “to prove only that [the defendant] cashed checks and/or made deposits of $10,000 or less for the purpose of evading the federal reporting requirements,” and not that “his deposits were artificially constructed pieces of a specific pool of cash equaling more than $10,000.”
Sperrazza argues an indictment that merely lists a series of transactions of less than $10,000 expands the scope of liability under § 5324(a) to the point that it “criminalize^] going to the bank too often.” Of course many a small business may make daily or weekly cash deposits in amounts less than $10,000; they are not liable to prosecution for structuring, however, because one violates § 5324(a)(3) only if one structures a transaction for the purpose of evading the reporting requirement. The key allegation in the indictment is not that Sperrazza engaged in a series of transactions under $10,000, but that he did so “for the purpose of evading the reporting requirements.” Sperrazza does not challenge the sufficiency of the evidence showing he had the requisite mens rea, which includes his partner’s testimony that Sperrazza told him he never cashed checks totaling more than $10,000 because he wanted “to avoid any reports or anything that would involve ... the regulatory or .IRS authorities.”[4]
*1125 In sum, we hold the Government may properly charge a defendant with structuring- a transaction in violation of § 5324(a)(3) by alleging he engaged in a series of currency transactions under $10,000 for the purpose of evading the reporting requirement. The statute does not require the Government to show the defendant had in hand at one time $10,000 or more of the funds he allegedly structured. The allegations in the indictment of Sperrazza are sufficient, therefore, to charge him with structuring a transaction in violation of § 5324(a)(3).[5]
b. Multiplicity
The Government concedes counts four and five of the indictment, which charge Sperrazza with structuring in 2007 and 2008 respectively, are multiplicitous, meaning they “charge[ ] a single offense in more than one count.” United States v. Woods, 684 F.3d 1045, 1060 (11th Cir.2012) (quotation marks omitted). The Government admits having erred by dividing the transactions based upon the year in which they occurred because “no provision of the statute indicates that a single course of structuring can be segmented based on 12-month intervals (or any other intervals of time).” United States v. Handakas, 286 F.3d 92, 98 (2d Cir.2002). As it acknowledges, it “should have charged [Sperrazza] not with two counts of structuring for a one-year period each, but rather with one count of structuring approximately $800,000 over a two-year period.” At the same time, the Government argues Sper-razza has forfeited any argument for relief on the basis of this error.
Indeed, Sperrazza has never argued the indictment is multiplicitous. He did not raise the point before the trial court or in his opening brief here, and his reply brief neither requests relief on this ground nor responds to the Government’s assertion he failed to raise the argument. Perhaps Sperrazza’s silence reflects his understanding that, as we have explained upon numerous occasions, “we do not consider arguments not raised in a party’s initial brief.” Holland v. Gee, 677 F.3d 1047, 1066 (11th Cir.2012) (internal quotation marks omitted). To be sure, we interpreted the old version of Rule 12 as requiring the court “to raise sua sponte the issue of whether an indictment properly charges an offense,” but we have declined to extend that obligation to a claim that “does not implicate jurisdictional issues and does not assert that the indictment fails to state an offense.” United States v. Seher, 562 F.3d 1344, 1359-60 (11th Cir.2009) (holding the court is not obligated to consider sua sponte whether an indictment is “duplicitous,” ie., whether it “charges two or more separate and distinct offenses” in the same count). Because we are not obligated to determine sua sponte whether counts four and five of the indictment are multiplici-tous, we will apply “our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned.” United States v. Ardley, 242 F.3d 989, 990 (11th Cir.2001).[6]
*1126 c. Factually inaccurate
Sperrazza next argues the indictment is factually inaccurate. The indictment introduces the list of 108 transactions Sper-razza conducted in 2007 and 2008 by alleging he “negotiate^] the checks set for[th] below in increments less than $10,000.” The parties agree that statement is inaccurate because the evidence shows 32 of the 108 transactions involved deposits of cash, not checks. For example, the indictment asserts Sperrazza conducted two transactions on March 15, 2007, one in the amount of $9,000.00 and a second in the amount of $7,289.65. The indictment states both transactions involved the cashing of checks, but the evidence presented at trial shows Sperrazza deposited $9,000.00 of cash into his account and then cashed checks totaling $7,289.65.
Because we have concluded it is “just and practicable” to apply the new version of Rule 12 to this claim, we review it only for plain error. Under that standard, we may reverse the defendant’s conviction only if we determine the district court committed “(1) ... an error (2) that is plain (3) that affects the defendant’s substantial rights and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.” United States v. Madden, 733 F.3d 1314, 1321 (11th Cir.2013).
Although the Government concedes it erred in drafting the indictment, it argues the error is not plain and did not affect Sperrazza’s substantial rights. We agree the factual inaccuracy in the indictment did not affect the defendant’s substantial rights. Despite the error, the indictment notified Sperrazza of the precise transactions the Government alleged were structured. The cash deposits were erroneously referred to as checks, but they were not outside the scope of the offense charged because a defendant may be convicted of violating § 5324(a)(3) for structuring that involves either cashing checks or depositing cash. See United States v. Vazquez, 53 F.3d 1216, 1219 (11th Cir.1995) (affirming a conviction for structuring cash deposits). Moreover, the Government’s trial exhibits clearly showed which transactions were actually deposits of cash, and a Government witness accurately described the exhibits to the jury. Sperraz-za himself also testified about some of the cash deposits, which indicates the factual inaccuracy in the indictment did not affect his ability to prepare a defense. See United States v. Hill, 643 F.3d 807, 860 (11th Cir.2011) (“A variance between indictment and proof is fatal only when it affects the ‘substantial rights’ of the defendant by insufficiently notifying him of the charges against him so that he may prepare a proper defense” (quotation marks omitted)); see also United States v. Pena, 684 F.3d 1137, 1147-48 (11th Cir.2012) (“Practical, rather than technical, considerations govern the validity of an indictment. Minor deficiencies that do not prejudice the defendant will not prompt this court to reverse a conviction.” (quotation marks omitted)).
B. Order of forfeiture
Sperrazza next argues the order compelling him to forfeit $870,238.99 violates the Excessive Fines Clause of the Eighth Amendment. A “forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant’s offense.” United States v. Bajakajian, 524 U.S. 321, 334, 118 S.Ct. 2028, 141 *1127 L.Ed.2d 314 (1998). We determine whether a fíne is “grossly disproportional” by considering “(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by .the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant.” United States v. Browne, 505 F.3d 1229, 1281 (11th Cir.2007).
First, we agree with the Government that Sperrazza’s conduct places him “at the dead center” of the class of persons at whom § 5324(a)(3) is directed. Law enforcement officials use the currency transaction reports filed by financial institutions to track down criminal activity. See Lang, 732 F.3d at 1247. Here the evidence shows Sperrazza structured transactions in order to disguise his tax evasion. The course of his unlawful structuring persisted for two years and involved more than 100 transactions in amounts totaling more than $800,000. See United States v. Jalaram, Inc., 599 F.3d 347, 356 (4th Cir.2010) (holding an order of forfeiture did not violate the Excessive Fines Clause because the defendant’s conduct “spanned a long period of time, was connected to other crimes, and ... [involved] substantial sums of money”).
Second, we do not think the order of forfeiture is excessive in relation to the penalties authorized by the Congress and the Sentencing Commission. We follow three rules of thumb when comparing the amount subject to forfeiture to the penalties authorized by statute and by the Sentencing Guidelines. First, “if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive.” United States v. 817 N.E. 29th Dr., Wilton Manors, Fla., 175 F.3d 1304, 1310 (11th Cir.1999). Second, a forfeiture “above either the statutory maximum fine or the Guidelines range” is not “presumptively invalid,” but will “receive closer scrutiny.” United States v. Chaplin’s, Inc., 646 F.3d 846, 852 (11th Cir.2011). Third, a “forfeiture far in excess of the statutory fine range ... is likely to violate the Excessive Fines Clause.” 817 N.E. 29th Dr., 175 F.3d at 1309 n. 9.
Under the relevant statute and Sentencing Guideline, Sperrazza was subject to a fine of up to $500,000. See 31 U.S.C. § 5324(d)(2); U.S.S.G. § 5E1.2(e)(4).[7] The order directing him to forfeit $870,238.99 must receive “close[ ] scrutiny” because it exceeds the statutory maximum fine of $500,000, Chaplin’s, 646 F.3d at 852, but it is not “far in excess” of that amount, 817 N.E. 29th Dr., 175 F.3d at 1309 n. 9. We have upheld all forfeitures imposed by district courts in amounts up to twice the maximum authorized fine; See, e.g., Chaplin’s, 646 F.3d at 854 (holding a forfeiture of $1,877,262 is not excessive in relation to a maximum authorized fine of $1,500,000); United States v. One Parcel Prop. Located at 427 & 429 Hall St., Montgomery, Montgomery Cnty., Ala., 74 F.3d 1165, 1172 (11th Cir.1996) (holding a forfeiture of $65,000 is not excessive in relation to a maximum authorized fine of $40,000); see also United States v. Wallace, 389 F.3d 483, 486 (5th Cir.2004) (holding a forfeiture is not grossly disproportional because it exceeds the maximum authorized fine “by only a factor of two”). By contrast, in *1128 Bajakajian the Supreme Court held the forfeiture of $357,144 would be grossly disproportional to the gravity of the offense because the Sentencing Guidelines provided the defendant would be subject to a maximum fine of only $5,000. See 524 U.S. at 338, 118 S.Ct. 2028.
Third, we reject Sperrazza’s argument that the amount of the forfeiture is grossly disproportional to the harm caused by the structuring. Sperrazza argues he caused minimal harm because he lawfully earned the money he structured. As the Government explains, however, a person may be convicted of structuring in violation of § 5324(a) regardless whether he earned the money lawfully. See United States v. MacPherson, 424 F.3d 183, 193 (2d Cir.2005) (“Section 5324 makes no reference to the source of the monies at issue or to the reason why a person seeks to avoid” the reporting requirement). To be sure, structuring might cause less harm when it does not disguise another crime. See Bajakajian, 524 U.S. at 338, 118 S.Ct. 2028 (holding a forfeiture was grossly disproportional to the gravity of the offense in part because the defendant’s violation of a reporting requirement “was unrelated to any other illegal activities” and the “money was the proceeds of legal activity and was to be used to repay a lawful debt”). That is not the case here, however, because the evidence shows Sperrazza structured transactions specifically in order to hide taxable income from the IRS. See United States v. George, 779 F.3d 113, 123-24 (2d Cir.2015) (distinguishing the harm caused by the “deliberate and sustained thwarting” of multiple laws from the “one-time failure to report otherwise legal activity as in Bajakajian ”). Sperrazza points out he eventually paid the tax owed on the income, but that was after a search of his home had turned up a large sum of cash. He also overlooks the harm caused by the structuring itself, which decreased the likelihood the IRS would detect the underlying tax evasion and increased the cost of investigating his crime. See United States v. Malewicka, 664 F.3d 1099, 1107 (7th Cir.2011) (explaining structuring “inhibit[s] the government’s ability to effectively uncover and identify fraud”).
Finally, Sperrazza asserts the “district court’s order permits the government to count and thus to forfeit the same funds ... twice” because the indictment “includes cash in and cash out.” As we have seen, the evidence shows Sperrazza structured some transactions by cashing checks and others by depositing cash into his account. He seems to imply the district court double counted some of the money he structured, presumably because some or all of the cash he deposited might have originated as checks he had previously cashed. As the Government points out, however, Sperrazza does not explain why this assertion is relevant to whether the order of forfeiture is grossly disproportion-, ate. Whether sufficient evidence supports the amount the defendant is said to have structured is a different question than whether the amount to be forfeit is so disproportionate as to violate the Eighth Amendment. Cf. United States v. Dowling, 403 F.3d 1242, 1245 (11th Cir.2005) (“[A]n objection based solely upon sufficiency of the evidence does not preserve a constitutional error”).
In any event, Sperrazza’s passing reference to the possibility the district court double counted some of the money subject to forfeiture is not presented as a challenge to the sufficiency of the evidence. We will not, therefore, address whether sufficient evidence supports the district court’s calculation of the amount subject to forfeiture. See Brown v. United States, 720 F.3d 1316, 1332 (11th Cir.2013) (“[A] party seeking to raise a claim or issue on appeal must plainly and prominently so *1129 indicate. Merely making passing references to a claim under different topical headings is insufficient. Instead, the party must clearly and unambiguously demarcate the specific claim and devote a discrete section of his argument to it.” (internal quotation marks and citation omitted)).
III. Conclusion
Sperrazza is not entitled to relief on his claim the indictment is defective. The indictment properly charges him with structuring in violation of 31 U.S.C. § 5324(a)(3), and although there is a factual error in the indictment, he has not shown the error affected his substantial rights. Sperrazza’s claim the order of forfeiture violates the Excessive Fines Clause of the Eighth Amendment also lacks merit. The judgment of the district court is, therefore,

Affirmed.

. See Fed.R.Crim.P. 12(b), (e)(2013):
(b) Pretrial Motions.
(3) Motions That Must Be Made Before Trial. The following must be raised before trial:
(B) a motion alleging a defect in the indictment or information- — but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.
(e) Waiver of a Defense, Objection, or Request. A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets.... For good cause, the court may grant relief from the waiver.

. See Fed.R.Crim.P. 12(b)(3), (c)(2015):
(b) Pretrial Motions.
(3) Motions That Must Be Made Before Trial. The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
(B) a defect in the indictment or information, including:
(i) joining two or more offenses in the same count (duplicity);
(ii) charging the same offense in more than one count (multiplicity);
(iii) lack of specificity;
(iv) improper joinder; and
(v) failure to state an offense.
(c) Deadline for a Pretrial Motion; Consequences of Not Making a Timely Motion.
(3) Consequences of Not Making a Timely Motion Under Rule 12(b)(3). If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause.

. The Congress amended § 5324 after the Supreme Court issued its opinion in Ratzlaf. See Pub.L. No. 103-325, § 411, 108 Stat. 2160, 2253 (1994). As we have since explained, "the only mental state required under the new enforcement provision is a purpose to evade the reporting requirement." United States v. Brown, 117 F.3d 471, 473 n. 1 (11th Cir.1997).

. Because Judge Rosenbaum similarly argues our interpretation of § 5324(a) might allow the Government to prosecute innocent conduct, see Dissent at 1, 15-16, we think it worth reiterating that a bank's reporting obligation applies only to a transaction in currency of more than $10,000. A person cannot be prosecuted for structuring routine transactions, such as depositing his paycheck, because the reporting requirement does not apply to the deposit of a check. See 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311 (requiring a financial institution to file a report of each “transaction in currency of more than $10,000”); § 1010.100(m) (defining “currency” as "the coin and paper money of the United States or of any other country”). Nor can a person be prosecuted solely because he prefers to deal in cash, as the statute requires the Government to prove he structured a transaction “for the purpose of evading the reporting requirements.” 31 U.S.C. § 5324(a).

. We express no view whether the Government may charge a defendant with more than one count of structuring under the circumstances presented by this appeal. As Judge Rosenbaum suggests, the Government might have been able to identify several occasions where Sperrazza possessed checks totaling more than $10,000 that he cashed in two or more transactions of less than $10,000. See Dissent at 1137 n. 7. Because we affirm the conviction based upon the theory advanced by the Government, we need not decide whether it could have charged Sperrazza with multiple counts.

. We note that even if counts four and five are multiplicitous, "any possible error was obviously harmless because the arguably mul-tiplicitous counts resulted in concurrent sentences.” Pacchioli, 718 F.3d at 1308. AI- *1126 though we can merge multiplicitous counts into a single count, doing so here would affect neither the sentence nor the amount subject to the order of forfeiture. See United States v. Langford, 946 F.2d 798, 805 (11th Cir.1991).

. Sperrazza was actually subject to a maximum fine of $1,000,000 because he was convicted of two counts of structuring, but the Government has conceded he should have been convicted of only one count. Therefore the Government has defended the forfeiture in relation to the maximum penalty Sperrazza could have received if he had been convicted of one count of structuring $870,238.99 over the course of two years.