[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11951

_____

D.C. Docket No. 1:15-cr-20189-RNS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

NIDAL AHMED WAKED HATUM,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 11, 2020)

Before MARTIN, GRANT, and LAGOA, Circuit Judges.

MARTIN, Circuit Judge:

If a defendant is convicted of a money laundering scheme that caused no

financial harm to an innocently involved bank, is an order of forfeiture still

mandatory? We conclude that it is and reverse the District Court's denial of the government's forfeiture motion in this case.

## I.

### A. FACTUAL BACKGROUND

Nidal Ahmed Waked Hatum is a 48-year-old citizen of Panama and Colombia. From January 2000 to February 2009, Mr. Waked was part owner and general manager of Vida Panama, Z.L., S.A. ("Vida Panama"), an electronics wholesaler and exporter based in Colón, Panama. For most of this time he was also the owner of two Miami, Florida-based corporations, Star Textile Manufacturing, Inc. ("Star Textile") and Global World Import & Export ("Global World"). Vida Panama had a line of credit at the International Commercial Bank of China ("ICBC" or the "Bank") in Panama, while Star Textile and Global World had accounts at Ocean Bank in Miami. Mr. Waked had signature authority on the bank accounts of all three corporations.

Between February 2000 and February 2009, Mr. Waked engaged in a series of so-called "mirror-image" financial transactions. Star Textile (and sometimes Global World) would send Vida Panama invoices for sums of money between $22,000 and $550,000, appearing to bill for electronics merchandise sold to Vida Panama. Mr. Waked would use these invoices to justify drawing on Vida Panama's line of credit at ICBC, which he would in turn use to pay Star Textile or

2

Global World.  After the transfer from Vida Panama cleared, Tamas Zafir, the manager of Star Textile and Global World, would send a check in the same amount from one of those corporations back to Vida Panama.  Ultimately, Mr. Waked would deposit that check in Vida Panama's bank account.

In truth, Vida Panama was not buying merchandise from Star Textile or Global World.  These invoices were phony and Mr. Waked was using them to launder money among his corporations.  The record is murky as to the nature of the laundered money, but regardless of the reason for the draws on Vida Panama's line of credit, Mr. Waked admitted to knowingly misrepresenting to the Bank how the drawn money would be used.  Because of the mirror-image nature of the scheme, the Bank incurred no financial loss from these transactions and all draws were repaid with interest.  Nevertheless, had the Bank known of the falsehoods that prompted these financial transactions, it would not have approved the draws on Vida Panama's line of credit or the wire transfers.

B. PROCEDURAL HISTORY

Mr. Waked, Mr. Zafir, Star Textile, and Vida Panama were indicted in a three-count indictment on March 24, 2015.  All defendants were charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and bank fraud in violation of 18 U.S.C. § 1344(2).  Mr. Waked and Vida Panama were also charged with an additional count of conspiracy to commit money laundering

3

in violation of 18 U.S.C. § 1956(h).  The indictment sought forfeiture from all defendants.  The charges against Mr. Zafir were dismissed on speedy trial grounds on October 17, 2016.

On October 19, 2017, Mr. Waked pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), based on misrepresentations to ICBC in violation of 18 U.S.C. § 1957.  In return for Mr. Waked's guilty plea, the government agreed to dismiss the indictment as to the remaining defendants and to dismiss the other counts against Mr. Waked after sentencing.  The plea agreement affirmatively addressed forfeiture:

> The United States and the defendant will endeavor to arrive at an agreement as to a specific sum of money that is subject to forfeiture . . . . Should the parties not come to such an agreement, each party will present its position to the court for a determination of the amount.  The defendant agrees to forfeit to the United States all of his right, title, and interest in property that was involved in the commission of the offense, or traceable to such property, in an amount to be determined by the court. . . . The defendant agrees to the entry of a money judgment equal to the value of the property involved in the offense which is not otherwise recovered . . . .

R. Doc. 342 ¶ 9 (emphasis added).  The parties agreed to a factual proffer setting forth the facts of the money laundering scheme.

Mr. Waked's guideline sentencing range was 41 to 51 months.  The government recommended a sentence of 51-months imprisonment.  At sentencing, the District Court asked the government why it requested such a high sentence when the defrauded bank ultimately suffered no loss.  The prosecutor responded

4

that Mr. Waked's actions caused a large risk of harm to the bank, made worse by the long duration of the fraud. Mr. Waked, on the other hand, requested a downward variance to 30 months.

The District Court sentenced Mr. Waked to 27-months imprisonment. The court subsequently entered a preliminary order of forfeiture for "all property involved in the offense or traceable to such property" pursuant to 18 U.S.C. § 982(a)(1), the forfeiture statute for money laundering offenses. The property subject to forfeiture was not set at that time. The preliminary order noted that, pursuant to Federal Rule of Criminal Procedure 32.2(b)(2)(C) and (e)(1), the government would be permitted to move at a later date to specify the forfeiture amount.

The government requested forfeiture of $20,852,000. This was the total amount of money Mr. Waked illegally transferred from Vida Panama to Star Textile and Global World, plus the amount Vida Panama received back in mirror-image repayments.[1] At a hearing on the motion for forfeiture, the government sought to proceed under the substitute forfeiture provision of 21 U.S.C. § 853(p), which is incorporated into money laundering forfeiture pursuant to 18 U.S.C. § 982(b)(1). Section 853(p) provides for forfeiture of "any other property of the

---

[1] We take no position as to whether this is the correct amount. Any reference in this opinion to the amount of money transferred or the number of fraudulent transfers is derived from the District Court record.

5

defendant" up to the value of the forfeitable property when it is no longer in the defendant's possession.  The government conceded there were no proceeds of Mr. Waked's money laundering offense, but argued that, under the broad "involved in" language of 18 U.S.C. § 982(a)(1), forfeiture of all the money Mr. Waked laundered was proper.  Mr. Waked responded that the District Court was under no obligation to order forfeiture because the laundered money had already been returned to the Bank.  Mr. Waked also argued that forfeiture money judgments are not authorized by statute.

At the conclusion of the forfeiture hearing, the District Court agreed with Mr. Waked and denied the government's motion for forfeiture.  The court denied forfeiture based on "the unique circumstances of this case[,] where Mr. Waked returned all of the money plus interest."  The District Court followed its ruling with a written order acknowledging that forfeiture is mandatory but declining to impose it because the statute's purposes—"to ensure that criminals do not retain money for themselves and to punish defendants by transferring ill-gotten gains to the United States"—would not be served here.  The court also said that even if it were required to impose a forfeiture money judgment, the government's requested sum of $20,852,000 would be unconstitutionally excessive.  Instead, the court would order $520,000 ($10,000 for each of the 52 transactions).

6

The government submitted an emergency motion pursuant to Federal Rule of Criminal Procedure 35(a) asking the District Court to correct Mr. Waked's sentence and order forfeiture. The government again sought $20,852,000, but now also requested an alternative judgment of $10,426,000 (the undisputed amount Mr. Waked caused Vida Panama to send in fraudulent transfers). At a hearing on the Rule 35(a) motion, the District Court said it was still having "a hard time getting [its] head wrapped around the idea that if the money goes back to the original victim before there's any prosecution, how is there any money to recover?" So it denied the government's request for relief. In addition to the reasons stated in its original order, the District Court also cited to the language in the plea agreement, saying that, since Mr. Waked returned all the laundered money to the Bank, there was no money to "recover."

This is the government's appeal of the final judgment, the denial of the request for forfeiture, and the denial of the Rule 35(a) motion. The government urges reversal on two fronts. First, the government argues the District Court was under an obligation to order forfeiture, and that no relevant exceptions relieved it of this obligation. Second, assuming the District Court is required to order forfeiture, the government further argues the court wrongly concluded that forfeiture in the amount of the laundered funds would violate the Eighth Amendment's prohibition against excessive fines.

7

## II.

"[W]e review de novo the district court's legal conclusions regarding forfeiture and the court's findings of fact for clear error." United States v. Elbeblawy, 899 F.3d 925, 933 (11th Cir. 2018) (quotation marks omitted). We also review de novo the district court's determination of whether a fine is constitutionally excessive, while reviewing for clear error the factual findings made by the district court in conducting the excessiveness inquiry. United States v. Bajakajian, 524 U.S. 321, 336 n.10, 118 S. Ct. 2028, 2037 n.10 (1998). The government must prove the elements of criminal forfeiture under 18 U.S.C. § 982(a)(1) by a preponderance of the evidence. United States v. Hasson, 333 F.3d 1264, 1277 (11th Cir. 2003).

## III.

A. FORFEITURE OVERVIEW

A person convicted of federal money laundering "must forfeit to the government all property that is either 'involved in' that violation or traceable thereto." United States v. Seher, 562 F.3d 1344, 1368 (11th Cir. 2009) (quoting, inter alia, 18 U.S.C. § 982(a)(1)). Property eligible for forfeiture "includes that money or property which was actually laundered ('the corpus'), along with 'any commissions or fees paid to the launderer and any property used to facilitate the laundering offense.'" Id. (alteration adopted) (quoting United States v. Puche, 350

8

F.3d 1137, 1153 (11th Cir. 2003)).  While § 982(a)(1) provides the substantive scope of property that may be forfeited from a defendant convicted of money laundering, 18 U.S.C. § 982(b)(1) incorporates the procedural provisions of 21 U.S.C. § 853 to govern "any seizure and disposition of the property and any related judicial or administrative proceeding."

Forfeiture of property under § 982(a)(1) is part of the "historical tradition" of "in personam, criminal forfeitures."  Bajakajian, 524 U.S. at 332, 118 S. Ct. at 2035.  As such, criminal forfeiture under this section is wholly punitive and "serves no remedial purpose."  Id.  Property forfeited under the criminal forfeiture laws is conveyed to the United States, not the victim or any other third party.  See United States v. Joseph, 743 F.3d 1350, 1354 (11th Cir. 2014) (per curiam).

B. OBLIGATION TO ORDER FORFEITURE

    1.  The Mandatory Nature of Money Laundering Forfeiture

Section 982(a)(1) says that district courts "shall order" forfeiture for defendants convicted of money laundering.  The Supreme Court has made clear that when Congress provides that a district court "shall order" forfeiture, it "could not have chosen stronger words to express its intent that forfeiture be mandatory." See United States v. Monsanto, 491 U.S. 600, 607, 109 S. Ct. 2657, 2662 (1989). Although Monsanto arose in the context of forfeiture under 21 U.S.C. § 853(a), our sister circuits have had no trouble applying it to § 982(a)(1).  See, e.g., United

States v. Carter, 742 F.3d 440, 446 (9th Cir. 2014) (per curiam); United States v. Hampton, 732 F.3d 687, 691 (6th Cir. 2013).  Neither do we.

Because forfeiture under § 982(a)(1) is mandatory, to the extent the District Court's denial of the government's motion was based on "equitable considerations," such as the statute's purpose, this ruling was in error.  See United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014).  The only way the District Court could avoid imposing forfeiture in this case is if a requirement for imposition of forfeiture was not satisfied.  We must now turn to the statutory definition of property for Mr. Waked's laundering offense and ask whether any such property existed in this case.

2.  Whether There Was Property "Involved in" the Laundering Scheme

The government seeks forfeiture based on the corpus of funds Mr. Waked laundered.  It does not seek forfeiture of property used to facilitate the money laundering or any commissions or fees that Mr. Waked received in connection with the scheme.  See Oral Arg. Recording (Feb. 11, 2020) at 16:50–16:57.  Thus, this appeal comes down to whether there was any property "involved in" Mr. Waked's money laundering scheme such that forfeiture is mandatory.  See 18 U.S.C. § 982(a)(1).  If there was no such property, the District Court's failure to order forfeiture would be harmless error.

10

Mr. Waked makes two broad arguments for why forfeiture is not authorized against him. First, he says that forfeiture money judgments are not permitted by statute and, as a result, the money he laundered is not "property" for purposes of § 982(a)(1). Second, for a variety of reasons, he says the laundered money cannot be used to calculate his forfeiture obligation because the money was returned to the Bank. We reject both arguments and rule that the money Mr. Waked laundered was property "involved in" his offense.

### a. Forfeiture Money Judgments

We first address Mr. Waked's argument that the money he laundered cannot be considered property "involved in" the offense because forfeiture money judgments are not authorized by statute.

Mr. Waked is right to concede that our precedent condones forfeiture money judgments. In both Seher and Puche, our Court approved forfeiture money judgments against defendants convicted of money laundering. Seher, 562 F.3d at 1355, 1373–74; Puche, 350 F.3d at 1153. And in Elbeblawy, we explained that money that is the "proceeds" of a criminal offense "constitute[s] a defendant's interest in property" and is subject to forfeiture via an in personam money judgment. 899 F.3d at 940 (quotation marks omitted). We recognize that the government seeks forfeiture from Mr. Waked under 18 U.S.C. § 982(a)(1), which does not, as many other substantive forfeiture provisions do, reach only "proceeds"

11

of the offense.  See, e.g., 18 U.S.C. § 982(a)(2), (7); 21 U.S.C. § 853(a).  However,

this distinction is not material here.  A defendant clearly has a personal interest in

the corpus of funds he laundered.[2]  See Seher, 562 F.3d at 1372; see also United

States v. Huber, 404 F.3d 1047, 1056 (8th Cir. 2005) (explaining that § 982(a)(1)

permits forfeiture money judgments).

The Supreme Court's decision in Honeycutt v. United States, 581 U.S. ___,

137 S. Ct. 1626 (2017), does not change this analysis.  Honeycutt held only that a

district court may not hold members of a conspiracy jointly and severally liable for

property that one conspirator, but not the other, acquired from the crime.  See id.

at 1630, 1632.  In holding that joint and several liability is not permitted under the

forfeiture laws, the Supreme Court did not rule on the question of whether money

judgments are unauthorized.  See United States v. Gorski, 880 F.3d 27, 40–41 (1st

Cir. 2018) (noting "Honeycutt did not rule on" the question of whether money

judgments are authorized by statute (quotation marks omitted)); see also United

States v. Bikundi, 926 F.3d 761, 794 (D.C. Cir. 2019) (per curiam) (stating that "it

is unclear whether Honeycutt's logic extends to" forfeiture under § 982(a)(1)), cert.

denied, 591 U.S. ___, ___ S. Ct. ___ (June 22, 2020) (No. 19-1020).  But in any

---

[2] There is an exception to this rule for intermediaries who "handled but did not retain the property in the course of the money laundering offense" and did not "conduct[] three or more separate transactions involving a total of $100,000 or more in any twelve month period."  18 U.S.C. § 982(b)(2).  These circumstances do not apply to Mr. Waked.

12

event, rather than "abolishing in personam judgments against conspirators, the [Honeycutt] Court presumed the continued existence of in personam proceedings when it stated that the statute at issue there 'adopt[ed] an in personam aspect to criminal forfeiture.'" Elbeblawy, 899 F.3d at 941 (second alteration in original) (quoting Honeycutt, 137 S. Ct. at 1635).

Unless and until Congress, the Supreme Court, or this Court sitting en banc changes the law of forfeiture, we will follow this Court's precedent permitting forfeiture money judgments.

### b. The Laundered Money

Mr. Waked makes several arguments for why, even if forfeiture money judgments are allowed by statute, the District Court was right not to order forfeiture against him. First, he argues that imposition of forfeiture against him would be "impermissible double counting" because he returned the money to the Bank. Second, he argues that the interest in the laundered money was Vida Panama's, not his. Finally, he argues the property for which forfeiture is sought was not "tainted," and thus cannot be ordered forfeited. We reject all three arguments.

No court has directly confronted the question of whether laundered money that winds up back with a victim of the scheme is still property "involved in" the offense for forfeiture purposes. But two courts have examined a related question

13

in the context of 18 U.S.C. § 982(a)(2), which provides for forfeiture of "any property constituting, or derived from, proceeds" obtained as the result of certain financial crimes. In United States v. Boulware, 384 F.3d 794 (9th Cir. 2004), the defendant was convicted for, among other things, making false statements to obtain a loan from a financial institution, thereby triggering § 982(a)(2)'s forfeiture obligation. Id. at 813. Although the defendant repaid the loan, the Ninth Circuit held he was not entitled "to a set-off" for otherwise forfeitable property that he returned to the defrauded institution. Id.[3] The Ninth Circuit noted that "§ 982(b)(1) incorporates the provisions of 21 U.S.C. § 853(c)," which provides that the government's interest in forfeitable property vests upon the commission of the criminal act. Id. It is not difficult to apply this principle to money laundering, where the government's interest in the corpus vests "the moment" such property is laundered. See United States v. McCorkle, 321 F.3d 1292, 1294 n.2 (11th Cir. 2003). Even if we agreed that laundered funds voluntarily returned to the victim are not always subject to forfeiture, see United States v. Hawkey, 148 F.3d 920, 928 (8th Cir. 1998), that is not what happened in Mr. Waked's case. Mr. Waked does not argue that he "returned" the fraudulently obtained funds to the Bank out

---

[3] The Second Circuit has also held that "§ 982(a) of the criminal forfeiture statute does not permit a defendant to offset loan proceeds that have been repaid." United States v. Annabi, 746 F.3d 83, 85 (2d Cir. 2014)

of the goodness of his heart.  His laundering scheme depended on the Bank being repaid in full at the conclusion of each mirror-image transaction.

Mr. Waked's reliance on cases discussing so-called "double recovery" of property is also misplaced.  In United States v. Ruff, 420 F.3d 772 (8th Cir. 2005), the Eighth Circuit doubted that a district court could order restitution to a government agency where that same government agency had already received forfeiture from the defendant.  See id. at 775.  But no such double recovery would result here because Mr. Waked made no payment to the government body seeking forfeiture.  This distinction animated our decision in Joseph, where we held the district court had no authority to offset the defendant's restitution obligation (owed to the IRS) by the forfeited amount (owed to the Department of Justice).  743 F.3d at 1355–56.  Thus, even if our Circuit did follow the rule announced in Ruff, that principle would not aid Mr. Waked.

Mr. Waked next argues that only his interest in the property can be forfeited, and because the money was laundered using Vida Panama's accounts, in personam forfeiture against him is not appropriate.  Mr. Waked's argument on this point relies on a misreading of this Court's precedent in United States v. Gilbert, 244 F.3d 888 (11th Cir. 2001).  Mr. Waked says Gilbert stands for the idea that any forfeiture judgment is limited to the "[d]efendant's interest in the actual property subject to forfeiture."  Br. of Appellee at 11 (emphasis added) (citing Gilbert, 244

F.3d at 918–19).  Yet a defendant who is convicted of money laundering still has an "interest" in the money that was laundered, even if the money was not held in the defendant's personal account.  See, e.g., Seher, 562 F.3d at 1368 ("A person convicted of violating 18 U.S.C. § 1956 . . . must forfeit to the government . . . that money or property which was actually laundered . . . .").

As part of his plea, Mr. Waked acknowledged that he personally applied for the credit draws and redeposited the money in Vida Panama's account with ICBC. He also acknowledged that he "intentionally misrepresented the nature and purpose of these financial transactions in order to induce ICBC to issue the loans and wire transfers."  He did all this not as a bystander, but as general manager and part owner of Vida Panama with signature authority over its bank accounts.  Allowing Mr. Waked to escape forfeiture on the ground that the interest in the laundered funds was actually Vida Panama's, not his own, would relieve him of culpability for the offense to which he already pled guilty.  As 18 U.S.C. § 982(b)(2) makes clear, a defendant can only avoid this outcome if he "acted merely as an intermediary."  Mr. Waked was more than an intermediary here.  See supra at 12 & n.2.

Finally, Mr. Waked argues criminal forfeiture can only be ordered against "tainted property," and that there is no tainted property here because the laundered funds were returned to the Bank with interest.  This argument derives from the

16

ruling in Honeycutt that forfeitable property under 21 U.S.C. § 853(a) is limited to "tainted property obtained as the result of or used to facilitate the crime." 137 S. Ct. at 1633. However, this aspect of the Honeycutt holding was based on the language of § 853(a), which limits forfeiture to "proceeds the person obtained directly or indirectly" as the result of the crime. By contrast, the government is seeking forfeiture against Mr. Waked under 18 U.S.C. § 982(a)(1). And because § 982(a)(1) contains neither a "proceeds" nor an "obtained" limitation, Honeycutt's "tainted property" requirement does not apply to this case. See United States v. Chittenden, 896 F.3d 633, 637 (4th Cir. 2018) (recognizing that Honeycutt's restriction of forfeiture to "tainted property the defendant personally acquired" is limited to § 853(a) and other laws with identical language).[4]

## C. AVAILABILITY OF SUBSTITUTE FORFEITURE

The government also argues a forfeiture money judgment is available because 21 U.S.C. § 853(p) permits substitute forfeiture where, as here, a

---

[4] We also note that the District Court was mistaken when it construed Mr. Waked's plea agreement as precluding forfeiture. The District Court said at the Rule 35(a) hearing that the plea agreement's reference to "property . . . not otherwise recovered" as the basis for the forfeiture amount precluded forfeiture since the laundered money was returned to the Bank. This phrase does not preclude forfeiture. The plea agreement's use of the word "recovered" in the forfeiture context clearly refers to property not already recovered for forfeiture by the United States, rather than the Bank. See, e.g., Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 631, 109 S. Ct. 2646, 2655 (1989) (noting the "strong governmental interest in obtaining full recovery of all forfeitable assets").

17

defendant does not retain laundered funds.[5]  Br. of Appellant at 32; Reply Br. at 16.  Section 853(p) provides for forfeiture in the amount of "the property involved in or traceable to the crime" if that property "is not available for forfeiture." United States v. Soreide, 461 F.3d 1351, 1352 n.1 (11th Cir. 2006) (per curiam); see also United States v. Bermudez, 413 F.3d 304, 306 (2d Cir. 2005) (per curiam) (holding that substitute forfeiture for cases arising under § 982(a)(1) may be ordered in the amount of the laundering corpus).  Although there are five general circumstances in which § 853(p) applies, the government argues only one is relevant here: that the forfeitable property has, "as a result of any act or omission of the defendant . . . [,] been transferred or sold to, or deposited with, a third party."  21 U.S.C. § 853(p)(1)(B).

Mr. Waked argues substitute forfeiture is unavailable—and thus that the district court should be affirmed—because the Bank is not a third party within the meaning of § 853(p)(1)(B).  According to Mr. Waked, this is so because the Bank was the original and still-current owner of the laundered money, as opposed to a mere "third party" to whom the money was transferred.  But Mr. Waked provides

_____

[5] Mr. Waked says "the Government made no . . . motion or showing in the trial court" that the substantive conditions for substitute forfeiture are present, so it should not be allowed to make this argument on appeal.  Br. of Appellee at 16.  The record simply does not bear this out.  The government repeatedly argued before the District Court that substitute forfeiture applies here.  By that same token, Mr. Waked argued before the District Court—as he does on appeal— that the government's inability to satisfy the requirements of 21 U.S.C. § 853(p) precludes the court from entering an order of forfeiture.

18

no support for his conclusory statement that victims of money laundering cannot also be third parties under § 853(p). Neither can we find any support for this idea in the text of the statute. Section 853(p)(1)(B) distinguishes between only "the defendant" and "a third party" to whom property was transferred. We see no reason why a victim of money laundering could not also have received a transfer of the property. See United States v. Fabian, 764 F.3d 636, 637 (6th Cir. 2014) ("One of those third parties was Jerry Mais, a victim of the fraud . . . ."). Our reading is confirmed by other provisions of the law, such as § 853(c)'s use of the term "third party" to refer to "a person other than the defendant." Again, there is no obvious reason why this term could not include a victim of the defendant's conduct.

We decline to affirm the District Court on the ground that substitute asset forfeiture is improper.

\*    \*    \*

The definition of property in 18 U.S.C. § 982(a)(1) is distinct from that in the other subsections of § 982(a), as well as 21 U.S.C. § 853(a). Our ruling allows forfeiture in the amount of property that Mr. Waked transferred as a part of his laundering scheme. We understand this outcome to be what Congress intended when it used the broad term "any property, real or personal, involved in such offense" and instituted a scheme of substitute forfeiture. We therefore conclude

that the District Court was under an obligation to order forfeiture against Mr.

Waked and we reverse its order to the contrary.

## IV.

The Eighth Amendment prohibits the imposition of "excessive fines." U.S.

Const. amend. VIII. A forfeiture payment is a "fine" within the meaning of the

Eighth Amendment if it "constitute[s] punishment for an offense." Bajakajian, 524

U.S. at 328, 118 S. Ct. at 2033. A criminal forfeiture money judgment is intended

to punish. See id. "[A] punitive forfeiture violates the Excessive Fines Clause if it

is grossly disproportional to the gravity of a defendant's offense." Id. at 334, 118

S. Ct. at 2036. In this Circuit, consideration of whether a punitive forfeiture

violates the Eighth Amendment is governed by three main factors: "(1) whether the

defendant falls into the class of persons at whom the criminal statute was

principally directed; (2) other penalties authorized by the legislature (or the

Sentencing Commission); and (3) the harm caused by the defendant." United

States v. Sperrazza, 804 F.3d 1113, 1127–28 (11th Cir. 2015) (quotation marks

omitted).

The District Court, applying these Eighth Amendment precepts, held that a

forfeiture order of $20,852,000[6] would be excessively punitive because "little harm

---

[6] The government now clarifies it is seeking a forfeiture judgment in the lesser amount of "$10,426,000, representing the total amount of funds actually used in the transactions." Reply Br. at 25 n.9.

was caused by the Defendant." For this reason, the court held that, "even if it were required to impose [forfeiture], a forfeiture money judgment of $520,000 would be appropriate ($10,000 for each of the 52 transactions in this case)." The government argues on appeal that forfeiture of $10,426,000—the amount of money the Bank allowed Mr. Waked to transfer, rather than the amount both transferred and redeposited—is not constitutionally excessive.

Reviewing the District Court's legal analysis de novo, we conclude the court erred in its holding that a fine of $10,000 per transaction is the constitutional ceiling for an order of forfeiture against Mr. Waked. The District Court went astray by considering only one of the enumerated factors—harm caused by the defendant—in performing the excessiveness analysis. In addition, the District Court's application of that factor was erroneous because the court failed to properly define the harm. For these reasons, we vacate the District Court's holding that any forfeiture order above $520,000 would be unconstitutionally excessive.

A. CLASS OF PERSONS

First, Mr. Waked is within the class of persons whom the money laundering statutes were meant to cover. He was not merely an intermediary. He was a sophisticated party who carried out a multi-million-dollar money laundering scheme over the course of several years. See 18 U.S.C. § 1957(a); see also Sperrazza, 804 F.3d at 1127 (holding that defendant's unlawful tax evasion "places

21

him 'at the dead center' of the class of persons" at whom the statute criminalizing such conduct is directed). Mr. Waked's role necessitates an order of forfeiture to be instituted against him, presuming such an order complies with the other constitutional requirements.

## B. AUTHORIZED PENALTIES

The second factor requires the court to consider whether "the order of forfeiture is excessive in relation to the penalties authorized by the Congress and the Sentencing Commission." Sperrazza, 804 F.3d at 1127. If the value of the forfeited property is within the permissible range of fines under the relevant statute or sentencing guideline, the forfeiture is presumptively constitutional. See id. The maximum fine for criminal money laundering is "twice the amount of the criminally derived property involved in the transaction." 18 U.S.C. § 1957(b)(2). And the statute defines "criminally derived property" as "any property constituting, or derived from, proceeds obtained from a criminal offense." Id. § 1957(f)(2).

Mr. Waked argues the government conceded before the District Court that "there are no proceeds of the offense" and so this penalty provision does not apply to him. This argument misunderstands the word "proceeds," which has a different meaning in § 1957 than in substantive forfeiture provisions. In the context of § 1957, the word "proceeds" generally refers to the total revenue—"receipts as well as profits"—of the underlying criminal offense. United States v. Jennings,

22

599 F.3d 1241, 1252 (11th Cir. 2010) (quotation marks omitted).  Here, Mr.

Waked defrauded the Bank by causing it to pay on Vida Panama's line of credit

and allowing him to transfer money to Star Textile and Global World.  These are

the "proceeds" to which § 1957(f)(2) refers.  See Oral Arg. Recording (Feb. 11,

2020) at 1:38–1:46 ("[T]here were proceeds from . . . the specified unlawful

activity[,] the preceding bank fraud on the Panamanian bank . . . ."); see also

United States v. Kratt, 579 F.3d 558, 560 (6th Cir. 2009) (defining "receipts . . .

received from the fraudulently obtained loans" as including the full "amount of the

loans").

Mr. Waked does not point to anything other than the government's supposed

concession at the forfeiture hearing in support of his argument that § 1957(b)(2)

should not be used to determine the maximum fine.  As we read the record, the

government did not waive the right to argue that there were bank fraud proceeds.

And since the money Mr. Waked fraudulently obtained are proceeds within the

meaning of § 1957(f)(2), the maximum fine for his money laundering offense is

twice the amount of money "involved in" the laundering scheme.  While this figure

appears to be $20,852,000,[7] the District Court has not made the findings of fact

---

[7] The Probation Department listed this amount as the maximum fine in the PSR and Mr. Waked did not object.  Assuming this figure—or something close to it—is correct, United States Sentencing Guidelines § 5E1.2(c)(2), which limits the maximum fine based on the defendant's guideline offense level, would not apply because Mr. Waked was "convicted under a statute authorizing [] a maximum fine greater than $500,000."  U.S.S.G. § 5E1.2(c)(4).

necessary to arrive at the proper forfeiture amount.[8]  Once it does, any forfeiture amount below the maximum fine will be presumptively constitutional.

## C.  HARM CAUSED BY THE DEFENDANT

Finally, the court must take account of the harm caused by the defendant. The District Court found that Mr. Waked's conduct caused little harm because "all of the funds were returned to the bank with interest."  But for some crimes, including money laundering, the harm "does not generally fall upon an individual, but falls upon society in general."  United States v. Martin, 320 F.3d 1223, 1227 (11th Cir. 2003) (per curiam) (quoting United States v. Thompson, 40 F.3d 48, 51 (3d Cir. 1994)).  The District Court erred by failing to look beyond the impact on the Bank's bottom line when considering whether Mr. Waked's conduct was harmful.

To the extent the District Court's order implicitly considered the harm Mr. Waked caused to society, it erred in comparing his case to Bajakajian and United States v. Ramirez, 421 F. App'x 950 (11th Cir. 2011) (per curiam) (unpublished).[9]

---

[8] Our dissenting colleague argues we should defer any discussion of the excessiveness of the forfeiture amount until after the District Court has made the appropriate findings.  Post at 33–34 & n.2.  This we cannot do.  In its order denying forfeiture, the District Court held that, "were [it] required to impose a forfeiture money judgment," only "a forfeiture money judgment of $520,000 would be appropriate."  R. Doc. 375 at 2 n.1.  We already held that the District Court is required to impose a forfeiture money judgment, supra at 19–20, so it follows that we must reach the court's alternative holding that any forfeiture amount over $520,000 would be excessive.

[9] In addition to being substantively distinguishable, we note that Ramirez, an unpublished opinion, is not binding precedent in this Circuit.  See 11th Cir. R. 36-2.

24

In Ramirez, a panel of our Court characterized the defendant as having committed a mere "reporting offense." 421 F. App'x at 952. We noted the defendant's conduct was not part of an "attempt to conceal his wrongdoing" and that the money involved in the transactions "was not connected to any illegal activity." Id. Similar facts led the Supreme Court in Bajakajian to conclude that forfeiture of $357,144, the amount of money the defendant failed to declare to customs inspectors, would be unconstitutionally excessive. See Bajakajian, 524 U.S. at 337–39, 118 S. Ct. at 2038–39. By contrast, the greater harm from money laundering is usually obvious: criminals launder money to cover up their criminal conduct, and society suffers "when criminally derived funds are laundered to allow the criminal unfettered, unashamed and camouflaged access to the fruits of those ill-gotten gains." United States v. O'Kane, 155 F.3d 969, 972–73 (8th Cir. 1998). So, in Martin, this Court approved of the district court's calculation of the "harm" as equaling the amount the defendant laundered through the 97 different monetary transactions for which he was convicted. 320 F.3d at 1226–27. Our Court said that calculating the harm simply based on the value of the stolen check that gave rise to these transactions would not take full stock of the harm to society. Id. at 1227. In such a case, society has an interest in redressing "the injection of illegal proceeds into the stream of commerce." Id. (quotation marks omitted). Similarly, when a laundering scheme covers up the movement of drug money, the conduct "is

25

harmful in and of itself." United States v. Chaplin's, Inc., 646 F.3d 846, 853 (11th Cir. 2011).

On remand, the District Court will have an opportunity to make detailed findings regarding the quantum of harm caused by Mr. Waked. When it does, it must consider the adverse impact on society that money laundering generally has as well as the specific conduct that Mr. Waked engaged in. Only after making those findings will the court be able to determine the constitutional contours of the forfeiture judgment against Mr. Waked.

## V.

Although we reverse the District Court's denial of the government's motion for forfeiture, we do not set the amount of the forfeiture required. The District Court has not conducted any factfinding to that effect, nor has it had the opportunity to conduct a proper constitutional analysis. The District Court must be given an opportunity to do so in the first instance.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

LAGOA, Circuit Judge, concurring in part and dissenting in part:

Because the statutory language in 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c) is mandatory, leaving no discretion to the district court, I concur with the majority opinion that the district court must enter a forfeiture money judgment against Mr. Waked and that such judgment must reflect the total money laundered through Mr. Waked's conspiracy. *See, e.g.*, *United States v. Hernandez*, 803 F.3d 1341, 1343 (11th Cir. 2015) (discussing the mandatory nature of 28 U.S.C. § 2461(c)); *United States v. Fleet*, 498 F.3d 1225, 1229 (11th Cir. 2007) (interpreting "shall order" language in 21 U.S.C. § 853(p)).  Furthermore, the text of § 982(a)(1) and our precedent leave no question that the amount subject to forfeiture in this case includes the amount laundered by Mr. Waked, even if he paid those funds back to the bank.  *See* 18 U.S.C. § 982(a)(1) (requiring forfeiture of "any property . . . involved in such offense"); *United States v. Seher*, 562 F.3d 1344, 1368 (11th Cir. 2009); *see also United States v. Bermudez*, 413 F.3d 304, 306 (2d Cir. 2005) (finding that § 982(a)(1), read in conjunction with § 982(b)(2), allows for forfeiture of assets "up to the amount laundered . . . even if he never retained those funds").

I respectfully disagree, however, with the majority's discussion in Parts III(C) and IV of the opinion.  The government has not yet sought substitute asset forfeiture.  Similarly, the district court has not yet made the factual findings for it to conclude whether or not the forfeiture amount is excessive under the Eighth Amendment.

Because it is premature for this Court to reach either of those issues on this appeal, I respectfully dissent from those portions of the majority opinion.

## I.    Substitute Asset Forfeiture Pursuant to 21 U.S.C. § 853(p)

The government has three, nonexclusive avenues for forfeiture relief against Mr. Waked. *See generally United States v. Candelaria–Silva*, 166 F.3d 19, 42 (1st Cir. 1999) (discussing three types of forfeiture relief against a criminal defendant). First, the government may seek an *in personam* forfeiture money judgment against the defendant. *United States v. Elbeblawy*, 899 F.3d 925, 940–41 (11th Cir. 2018) (upholding district court's authority to enter forfeiture money judgments). Second, the government may seek direct forfeiture of specific property made forfeitable by statute. *See* 18 U.S.C. § 982(a)(1), (b)(1); 21 U.S.C. § 853(a). Third, in the absence of directly forfeitable property, the government may seek forfeiture of other property belonging to the defendant—that is, substitute property—by meeting the requirements of 21 U.S.C. § 853(p). *See* 18 U.S.C. § 982(b)(1).

These three separate forms of forfeiture relief are reflected in the Rules of Criminal Procedure. A preliminary order of forfeiture must include the amount of any money judgment, direct the forfeiture of specific property, and, "*if the government has met the statutory criteria*," direct forfeiture of any substitute property. Fed. R. Crim. P. 32.2(b)(2)(A) (emphasis added). If the government subsequently identifies substitute property subject to forfeiture under applicable

28

statutes, it may move for a new or amended order of forfeiture.  Fed. R. Crim. P. 32.2(e).  Put simply, substitute asset forfeiture and forfeiture money judgments are separate forfeiture remedies.  The latter is not dependent on the existence of forfeitable substitute property or the government's entitlement under § 853(p).  *See United States v. Lo*, 839 F.3d 777, 792 (9th Cir. 2016) ("[W]here the government does not seek substitute property under Rule 32.2(e), but seeks only 'a money judgment as a form of criminal forfeiture under Rule 32.2(b),' those requirements [of § 853(p)] are inapplicable.").

Here, the government sought a forfeiture money judgment against Mr. Waked. It did not request relief under § 853(p)—the substitute asset forfeiture provision—in its initial and subsequent motions and memoranda nor did it identify specific substitute property to be forfeited. Specifically, the government stated that "[b]ecause the United States has not, as of this date, identified specific property to forfeit, it seeks a money judgment in" the total amount laundered by Mr. Waked. The government mentioned the statutes governing substitute asset forfeiture only in later briefing, and did so only to support its argument that the district court could (and must) enter a forfeiture money judgment even though Mr. Waked returned all laundered funds to the bank.  Specifically, the government argued that "[t]he exemption in Section 982(b)(2) on forfeiting substitute assets would make no sense if Section 982(a)(1) limited forfeiture only to the amount of funds that a defendant

29

had retained for himself." Moreover, in those filings, the government reiterated that it was seeking entry of an *in personam* forfeiture money judgment against Mr. Waked. Similarly, at the hearing on the government's forfeiture motion, the government pointed to the substitute asset forfeiture provisions to address the district court's main concern that it may be improper to order forfeiture of property that is no longer with the defendant. Thus, throughout the proceedings before the district court, the government maintained that it sought a forfeiture money judgment "in an amount equal to the amount of money that was involved in the money laundering offense."

On appeal, the government does not take the position that it is entitled to a forfeiture money judgment against Mr. Waked under §853(p) and § 982(b)(2) as a form of substitute asset forfeiture. Rather, the government acknowledges that the money judgment is a means for the government to memorialize Mr. Waked's forfeiture obligations so that it can later target substitute assets to satisfy that judgment. As it did below, the government discusses § 853(p) and § 982(b)(2) only to demonstrate that Congress, by incorporating substitute asset relief and providing a safe harbor for low-level laundering intermediaries, expressed an intent to hold large-scale money launderers liable for the total amount laundered, even if they do not retain the laundered proceeds. The government further clarifies its position by noting that a money judgment is necessary because it would "allow[] the government

30

to enforce that judgment by attempting to locate substitute property belonging to Waked up to the value of that money judgment."

The majority opinion, however, suggests that substitute asset forfeiture is available to the government and rejects Mr. Waked's argument that the bank is not a third-party transferee for purposes of § 853(p)(1)(B).  The majority's conclusion appears to stem from the notion that the government based its entitlement to forfeiture, at least in part, on the substitute asset forfeiture provisions.  As discussed above, the record is clear that the government moved for only a money judgment.  More importantly, such a conclusion would blend two separate forfeiture remedies, and relieve the government from complying with the requirements of § 853(p) while depriving Mr. Waked of the opportunity to contest them.

I agree that the government is entitled to a forfeiture money judgment in the amount of the money laundered by Mr. Waked, *see* 18 U.S.C. § 982(a)(1), and that nothing in § 853(p) affects the district court's obligation to enter the requested money judgment.  But any additional questions relating to entitlement to substitute asset forfeiture are not before this Court.  Once the district court enters the requested money judgment, the government may seek forfeiture against substitute property owned by Mr. Waked, if any.  If it chooses to proceed against such substitute property, the government would have to move under Rule 32.2 and meet the relevant statutory requirements by a preponderance of the evidence.  *See United States v.*

31

*Hasson*, 333 F.3d 1264, 1278–79 (11th Cir. 2003).  This has not happened yet, and I therefore would not address any issues relating to that process in this appeal.

## II.     The Eighth Amendment Analysis

In a footnote, the district court stated that the forfeiture amount requested by the government was constitutionally excessive under the Eighth Amendment because Mr. Waked's criminal activity caused little harm.  The district court noted that, "if it were required to impose one, a forfeiture money judgment of $520,000 would be appropriate ($10,000 for each of the 52 transactions in this case)."  In response, the majority applies this Court's excessive fine test in *United States v. Sperrazza*, 804 F.3d 1113 (11th Cir. 2015), and concludes that the district court erred in finding that any forfeiture money judgment beyond $520,000 would be unconstitutional under the Eighth Amendment.[1]

---

[1]    The majority characterizes the district court's footnote as an alternative holding. However, the sole issue before the district court was whether entry of a forfeiture money judgement was mandatory.  Nowhere in its footnote does the district court contend that the Eighth Amendment precludes *entry* of a forfeiture money judgment against Mr. Waked.  Instead, the district court's brief Eighth Amendment discussion begins with "[e]ven if the Court were required to impose a forfeiture money judgment" and concludes with what amount "would be appropriate."  This statement is dictum, not a holding.  *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1289 (11th Cir. 2010) ("All statements that go beyond the facts of the case—and sometimes, but not always, they begin with the word 'if'—are dicta."); *see also In re BFW Liquidation*, 899 F.3d 1178, 1186 (11th Cir. 2018) (noting that a statement constitutes dictum, not a holding, if it is unnecessary to the results of the case).  The only holding by the district court pertains to the entry of a forfeiture money judgment against Mr. Waked. Until the district court enters a money judgment against Mr. Waked and decides whether to limit the amount based on the Eighth Amendment, there is no holding on that issue for us to review.

*Sperrazza* requires us to consider "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *Id.* at 1127 (quoting *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007)).  The second prong of that inquiry, which could afford a forfeiture order a strong presumption of constitutionality, *see United States v. Dicter*, 198 F.3d 1284, 1292 (11th Cir. 1999), requires a specific factual finding in this case.[2]  The maximum fine available against Mr. Waked depends on the total "amount of the criminally derived property involved in" Mr. Waked's offenses.  18 U.S.C. § 1957(b)(2); *accord* U.S.S.G. § 5E1.2(c).

This Court recognizes that the district court is the best forum to decide and weigh the various fact-based considerations that drive the excessive fine analysis. *See, e.g.*, *Seher*, 562 F.3d at 1371 (remanding Eighth Amendment issue to the district court for factual findings because this Court did not have a clear factual basis for evaluating whether forfeiture of certain assets would constitute an excessive fine); *United States v. Land, Winston County*, 163 F.3d 1295, 1303 (11th Cir. 1998) (remanding Eighth Amendment issue to the district court "[b]ecause the issue of

---

[2] As well, the third prong, i.e., the harm caused by Mr. Waked's conduct, also requires specific factual findings that should be better developed in the district court before reaching this Court. *See, e.g.*, *Sperrazza*, 804 F.3d at 1128 (considering evidence regarding the purpose of, and indirect harm caused by, the defendant's criminal conduct).

33

excessive fines may depend on various factors and conduct with which the district court is more familiar than this court"). This allocation of fact-finding reflects this Court's limited role in reviewing forfeiture orders for constitutional excessiveness: "rather than strict proportionality, we review fines only for gross disproportionality." *United States v. Chaplin's, Inc.*, 646 F.3d 846, 851 (11th Cir. 2011).

As the majority acknowledges, the district court has not made findings of fact as to the total amount laundered by Mr. Waked. And it follows that the district court has not made the factual findings required by *Sperrazza* based on that total amount. Thus, absent clear determinations from the district court, I believe that the proper procedure is to remand to the district court to provide it the opportunity to make the findings relevant to the excessive fine analysis and for this Court to defer its discussion until it is presented with those findings. Otherwise, by deciding a legal issue based on as-yet-not-made factual determinations, this Court risks issuing an advisory opinion "that merely opine[s] on 'what the law would be upon a hypothetical state of facts.'" *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 733 (11th Cir. 2018) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

For the foregoing reasons, I concur in reversing the order denying a forfeiture money judgment to the government, but I would defer discussion on substitute asset forfeiture and the Eighth Amendment until those issues properly reach this Court.

34