[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12273

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOFF STENN WROY PHILOSSAINT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cr-80144-RS-1

_____

2                    Opinion of the Court                    23-12273

Before JORDAN, and BRASHER, Circuit Judges, and COVINGTON,*
District Judge.

JORDAN, Circuit Judge:

Joff Stenn Wroy Philossaint pled guilty to charges of conspiracy to commit wire fraud and conspiracy to commit money laundering.  The offenses arose from his involvement in a scheme to fraudulently obtain Paycheck Protection Plan ("PPP") and Economic Injury Disaster Loan ("EIDL") loans.  The district court sentenced him to 50 months of imprisonment, followed by a term of supervised release.  It also ordered him to pay restitution of $3.85 million, and entered a forfeiture judgment of $673,210 against him.[1]

On appeal, Mr. Philossaint argues only that the district court miscalculated the amount of forfeiture.  The United States concedes that the amount was based on a miscalculation, but asks us to affirm the forfeiture order because Mr. Philossaint could have been found liable for a much higher forfeiture amount as a leader or mastermind of the fraudulent scheme under a hypothetical sketched out in *Honeycutt v. United States*, 581 U.S. 443, 450 (2017).  Because the forfeiture amount was incorrect due to an admitted

---

* Honorable Virginia M. Hernandez Covington, United States District Judge for the Middle District of Florida, sitting by designation.

[1] Mr. Philossaint proceeded to trial on a separate charge of obtaining citizenship by fraud, and the jury found him guilty of that charge.  That conviction is not at issue in this appeal, so we do not discuss it further.

calculation error, and because the record is insufficiently developed for us to consider the government's *Honeycutt* theory, we vacate the forfeiture order and remand for further proceedings.

**I**

A grand jury charged Mr. Philossaint with (1) conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; (2) two counts of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and (3) obtaining citizenship by fraud, in violation of 18 U.S.C. § 1425(a). The superseding indictment included forfeiture allegations relating to the wire fraud and money laundering charges pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2)(A). Mr. Philossaint pled guilty to the wire fraud conspiracy and money laundering conspiracy charges and agreed to a factual proffer concerning his involvement in the fraudulent loan scheme.

According to the proffer, Mr. Philossaint assisted multiple co-conspirators in preparing and submitting false and fraudulent loan applications through the PPP and EIDL programs. Based on the fraudulent applications he facilitated, various financial institutions funded loans to businesses owned by him and by his co-conspirators. Mr. Philossaint also later assisted with fraudulent applications for loan forgiveness.

In addition, Mr. Philossaint was involved with the administration of funds received from the fraudulent loans for some, but not all, of the co-conspirators through his position as account administrator on the payroll processing accounts into which the

fraudulent loan proceeds were deposited.  He received 10% of the total loan proceeds paid to some, but not all, of the co-conspirators.

The presentence investigation report ("PSI") prepared by the probation office summarized the offense conduct in a way that was generally consistent with the factual proffer but added additional details regarding the specific companies which had fraudulently obtained loans and the amounts of those loans. [**D.E. 295**] The PSI indicated that Mr. Philossaint owned three of the companies that had applied for and obtained fraudulent loans and so had directly received all of the loan proceeds distributed to those companies.  The PSI explained, consistent with the proffer, that Mr. Philossaint was not the payroll processing contact for every company involved in the scheme.  But the PSI contradicted the proffer by stating that Mr. Philossaint received a 10% kickback for every loan that was funded.

The government submitted objections to the PSI.  It specifically noted that Mr. Philossaint had not received a 10% kickback for every loan paid, and attached a chart of those loans for which he had actually received a kickback.  According to the government Mr. Philossaint received a kickback on 19 of the 33 loans.  Although the offense conduct language in the PSI was not revised, the probation officer agreed to the government's objections in the second and final addendum to the PSI.

Before the sentencing hearing, the government moved for a preliminary order of forfeiture under §§ 982(a)(1) and 982(a)(2) in the amount of $673,210.  The government represented that it

reached this number by adding the total proceeds of the loans paid to the three companies owned by Mr. Philossaint and the total amount paid to him in the form of kickbacks, i.e., adding up all the money he received directly from the scheme. In its calculation, however, the government incorrectly assumed that Mr. Philossaint received a kickback on every loan that was funded. This assumption, and the calculation based on that assumption, contradicted the government's acknowledgement that Mr. Philossaint did not receive a kickback for every fraudulent loan that was funded. *Compare* D.E. 303-1 at 1 (clarifying that Mr. Philossaint did not receive a kickback for every loan paid during the scheme, and asserting that the amount subject to forfeiture was $549,226), *with* D.E. 307 at 14 ("Based on the 10% kickbacks Defendant received on loans he assisted others on, and the loans Defendant himself received, Defendant obtained a total of $673,210.934, which amount provides a reasonable estimate on the amount of property subject to forfeiture.").

The government also asserted that under an unpublished Eleventh Circuit case "conspiracy leaders or 'masterminds' who control criminal enterprises jointly acquire the proceeds of the conspiracy with their co-conspirators." *Id.* at 6 (quoting *United States v. Elbeblawy*, 839 F. App'x 398, 400 (11th Cir. 2021)). Yet the government did not explain why Mr. Philossaint was the sort of leader or mastermind who could be ordered to forfeit the proceeds of the entire illegal scheme. According to the government, as a mastermind and leader of the scheme he could be subject to a forfeiture order of up to $3.85 million, the total amount of loans paid as a result of the scheme.

At the sentencing hearing, the government requested a forfeiture judgment in the amount of $673,210 because in its view Mr. Philossaint "could be held liable for the entire loss amount," which was about $3.85 million. *See* D.E. 370 at 71. Mr. Philossaint objected, and again argued that the forfeiture should not exceed $549,133, the amount of money he directly received from the scheme. *See id.* Without making any factual findings about whether Mr. Philossaint was a leader or mastermind who could be subject to a forfeiture judgment in the full amount of the proceeds derived from the scheme, the district court said that $673,210 was "the amount" of forfeiture. *See id.*

In its written forfeiture order the district court ruled that Mr. Philossaint had to forfeit $673,210 under §§ 982(a)(1) and 981(a)(2). That amount was "[b]ased on the 10% kickbacks [Mr. Philossaint] received on loans he assisted others on, and the loans he himself received[.]" D.E. 312 at 10.[2]

The district court did not address in its written order the government's theory that the leader or mastermind of a conspiracy could be ordered to forfeit the total amount of proceeds derived from the criminal scheme. Nor did the district court make any factual findings relating to whether Mr. Philossaint was such a leader or mastermind in the fraudulent loan scheme.

---

[2] The district court ordered Mr. Philossaint to pay $3.85 million in restitution.

## II

We review the factual findings underlying a forfeiture order for clear error, but we review any legal conclusions *de novo*. *See United States v. Gladden*, 78 F.4th 1232, 1242 (11th Cir. 2023). We "will find clear error if, after reviewing all the evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and quotation omitted). A mathematical or computational mistake in determining the amount of forfeiture can constitute clear error. *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1345 (11th Cir. 2009).

## III

The district court ordered forfeiture pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2). As relevant here, § 982(a)(1) requires that a person convicted of a money laundering offense under 18 U.S.C. § 1956 be ordered to forfeit "any property, real or personal, involved in such offense, or any property traceable to such property." And, as relevant here, § 982(a)(2) requires that a person convicted of conspiracy to commit a violation of 18 U.S.C. § 1343 "affecting a financial institution" be ordered to forfeit "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation."

Our sister circuits have held that the government bears the burden of establishing, by a preponderance of the evidence, that property is subject to forfeiture under § 982(a)(1). *See, e.g., United States v. Rutgard*, 116 F.3d 1270, 1283 (9th Cir. 1994); *United States v. Voight*, 89 F.3d 1050, 1084 (3d Cir. 1996); *United States v. Myers*, 21

F.3d 826, 829 (8th Cir. 1994). And they've come to the same conclusion about § 982(a)(2). *See United States v. Garbacz*, 33 F. 4th 459, 472 (8th Cir. 2022); *United States v. Cherry*, 30 F.3d 658, 670 (4th Cir. 2003). We agree with them as to both provisions. Forfeiture "is a part of the sentence," *Libretti v. United States*, 516 U.S. 29, 42 (1995), and we have held that the government must establish forfeiture by a preponderance of the evidence under a similar criminal provision. *See United States v. Dicter*, 198 F.3d 1284, 1289-90 (11th Cir. 1999) (addressing forfeiture under 21 U.S.C. § 853(a)(2)).

## A

This is not a difficult case. The district court, following the government's flawed computation, committed a clear error in determining that Mr. Philossaint had to forfeit $673,210. And that error requires vacatur of the order of forfeiture.

According to the government's motion for a preliminary order of forfeiture and the district court's written order, the forfeiture amount was purportedly reached through a simple calculation: adding the loan proceeds obtained by Mr. Philossaint's three businesses and the total amount of the 10% kickbacks he received. The problem was that the government, and then the district court, incorrectly assumed that Mr. Philossaint had received a 10% kickback for every loan that had been funded despite the government having clarified that was not the case. *See* D.E. 303-1 at 1-2. If the right numbers are plugged into the government's formula, the correct amount of forfeiture is $549,226.30 (a slightly higher figure than the $549,133 proposed by Mr. Philossaint below).

To its credit, the government concedes this error on appeal. *See* Appellee's Br. at 20 ("[T]he district court's forfeiture order is incorrect when it states that the $673,210.934 amount is based on Philossaint receiving kickbacks on more than 19 loans."). So, "[a]lthough the district court used [a] correct methodology, it miscalculated the amount of the forfeiture money judgment, as the government concedes." *Hoffman-Vaile*, 568 F.3d at 1345 (vacating forfeiture judgment based on a district court's mathematical miscalculation). We therefore need to vacate the forfeiture order and remand for further proceedings.

**B**

The government contends, however, that the error does not require vacatur of the forfeiture order because $673,210 is less than the maximum amount Mr. Philossaint could have legally been required to forfeit (i.e., the $3.8 million of proceeds generated by the scheme). This argument is based in part on a hypothetical discussed in *Honeycutt v. United States*, 581 U.S. 443, 450 (2017).

In *Honeycutt* the Supreme Court held that forfeiture ordered under 21 U.S.C. § 853(a)(1) does not permit joint and several liability. *See id.* at 448. First, the Court reasoned that § 853(a)(1) "limits forfeiture to 'property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of' the crime," *i.e.*, "tainted property." *Id.* at 448–49 (quoting § 853(a)(1)). This eliminated joint and several liability because one defendant would have to make payment from untainted property to satisfy the forfeiture order. *Id.* at 449. Second, the Court noted that

§ 853(a) limited forfeiture to property that the defendant had "obtained" and concluded that this required "personal possession or use." *Id.* at 450.[3]

But the Court then discussed a hypothetical situation in which a marijuana grower "masterminds a scheme" to recruit a college student to distribute their illegal crop. The Court explained that the student would only be liable to forfeit property he directly received and not for any proceeds received by other co-conspirators in the scheme. *See id.* at 448. On the other hand, "the marijuana mastermind might receive payments directly from drug purchasers, or he might arrange to have drug purchasers pay an intermediary such as the college student. In all instances, he ultimately 'obtains' the property—whether 'directly or indirectly'" and so could be ordered to forfeit the full amount of the scheme's total proceeds. *Id.* at 450 (quoting § 853(a)(1)).

For a number of reasons, we decline to address the government's argument based on the hypothetical in *Honeycutt,* and leave the matter for the district court to take up on remand. We start with § 982(a)(1) and then move to § 982(a)(2).

---

[3] We have explained that "*Honeycutt* does not purport to address joint and several forfeiture generally but instead narrowly addresse[s] whether a defendant could be ordered to forfeit property that his co-conspirator alone acquired." *United States v. Goldstein*, 989 F.3d 1178, 1203 (11th Cir. 2021).

**1**

The government seems to assume (or believe) that the *Honeycutt* hypothetical applies across the board to all criminal forfeiture provisions, *see* Appellee's Br. at 14-18, but that is not necessarily so. "To decide, we start with the text of the statute," *Babb v. Wilkie*, 589 U.S. 399, 404 (2020), and that means the language of the provision at issue is the starting point for figuring out what property is subject to forfeiture.

Significantly, § 982(a)(1) is materially different than the provision considered in *Honeycutt*. *Compare* 21 U.S.C. § 853(a)(1) (limiting forfeiture to property the defendant "obtained . . . as the result of" the crime), *with* 18 U.S.C. § 982(a)(1)(A) (requiring forfeiture of "any property, real or personal, involved in [a 18 U.S.C. § 1956] offense, or any property traceable to such property"). And that difference in language matters. We have noted that, "because § 982(a)(1) contains neither a 'proceeds' nor an 'obtained' limitation, *Honeycutt*'s 'tainted property' requirement does not apply to [a money laundering] case." *United States v. Waked Hatum*, 969 F.3d 1156, 1165 (11th Cir. 2020).

Under our precedent, a "person convicted of violating 18 U.S.C. § 1956 . . . must forfeit to the government [under § 982(a)(1)] all property that is either 'involved in' that violation or traceable thereto. Property eligible for forfeiture under . . . § 982(a)(1) includes the money that was actually laundered ('the corpus') along with 'any commissions or fees paid to the launderer[ ] and any property used to facilitate the 'money laundering offense.'" *United*

*States v. Seher*, 562 U.S. 1344, 1368 (11th Cir. 2009) (citation omitted).  *See also Waked Hatum*, 969 F.3d at 1163 (explaining that "a defendant who is convicted of money laundering . . . has an 'interest' in the money that was laundered, even if the money was not held in the defendant's personal account").

We decline to apply § 982(a)(1) *sua sponte* on this record. First, the government did not rely on cases like *Waked Hatum* or *Seher* below, and does not assert them on appeal.  Second, the PSI did not set out the amount of loan proceeds that were actually laundered, or the amount of funds that might have been used to facilitate the money laundering. Instead, the PSI relied on an "intended loss" rationale in applying the grouping rules of the Sentencing Guidelines.  *See* D.E. 308 at ¶ 90.  Third, because the government did not seek forfeiture under § 982(a)(1) below based on cases like *Waked Hatum* or *Seher*, the district court did not make any findings as to what amount Mr. Philossaint could be ordered to forfeit pursuant to § 982(a)(1) based on his money laundering conviction.

**2**

The language of § 982(a)(2) is identical to the language of the provision at issue in *Honeycutt*. *Compare* 21 U.S.C. § 853(a)(1) ("any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation"), *with* 18 U.S.C. § 982(a)(2) ("any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation").  So the government is on firmer ground in

asserting that the *Honeycutt* hypothetical generally applies to § 982(a)(2).

We have explained, however, that "based on the hypothetical that *Honeycutt* relied on, [the] 'bar against joint and several forfeiture for co-conspirators applies only to co-conspirators who never possessed the tainted proceeds of their crimes.'" *United States v. Young,* 104 F. 4th 1307, 1328 (11th Cir. 2024) (applying 18 U.S.C. § 982(a)(7)) (citation omitted).  Here it appears that Mr. Philossaint only possessed (i.e., received or had control of) the total sum of $549,226.30, and there are no findings by the district court to the contrary.

Even if Mr. Philossaint received or had control of a higher sum, the district court did not make any factual findings about whether he was the sort of leader or mastermind of the scheme under *Honeycutt* that would allow a forfeiture judgment for the full amount of the fraudulent loans funded by the scheme, i.e., $3.85 million.  The government relies on the fact that the district court imposed a two-level aggravating role enhancement on Mr. Philossaint for being an "organizer, leader, manager, or supervisor," U.S.S.G. § 3B1.1(c), but a role enhancement under the Sentencing Guidelines does not automatically make a defendant a leader or mastermind for purposes of forfeiture under *Honeycutt*. *See, e.g., United States v. Moya*, 18 F.4th 480, 484-86 (5th Cir. 2021) (vacating forfeiture order against defendant who received a three-level role enhancement pursuant to U.S.S.G. § 3B1.1(b)—an enhancement applicable only to managers or supervisors of criminal

activity that involved five or more participants or was otherwise extensive—because, despite the role enhancement, liability for the original, much larger forfeiture amount "would cast him as the student in the *Honeycutt* hypo"). *Cf. United States v. Hamaker*, 455 F.3d 1316, 1337 (11th Cir. 2006) ("[A]lthough forfeiture and loss [under the Sentencing Guidelines] bear similarities and are determined under the same burden of proof, the two require distinct calculations and need not be calculated identically.") (citing 18 U.S.C. § 982(a)).

The Fifth Circuit case cited by the government, *United States v. Mazkouri*, 945 F.3d 293 (5th Cir. 2019), is distinguishable. In *Mazkouri* the Fifth Circuit upheld a forfeiture order of $500,000 under 18 U.S.C. § 982(a)(7) despite the district court not providing any explanation as to how it had reached that figure. *See id.* at 306-07. The defendant had been convicted for his involvement in a fraudulent health-care fraud scheme in which Medicare had paid a total of $22.9 million. *See id.* at 300. Crucially, the defendant at various times admitted to personally receiving either $2.4 million or $892,155 from Medicare through the scheme, and the government estimated that he personally received $1.1 million. *See id.* at 307. On that record the Fifth Circuit concluded "that the district court's order of $500,000 [was], if anything, an underestimate of the amount [the defendant] personally gained from his fraud," and upheld the forfeiture order as a reasonable estimate. *See id.*

In *Mazkouri* there was no possibility that $500,000 could be more than the defendant had personally benefited from the fraudulent scheme. The defendant had, as noted, admitted that he had

directly received at least $892,155.  Here Mr. Philossaint contends that his personal benefit was limited to $549, 226.30, and as a result he maintains that the forfeiture order cannot exceed that amount. Because the district court did not find that Mr. Philossaint's personal benefit exceeded $549,226.30, *Mazkouri*—which involved a different forfeiture provision—does not provide a basis for affirmance.

We seriously doubt the government's suggestion that—assuming Mr. Philossaint was the sort of leader or mastermind described in *Honeycutt*—the district court could have blindly picked a forfeiture amount anywhere between $549,226.30 (the amount Mr. Philossaint conceded he received) and $3.85 million (the total amount of the fraudulent loans that were funded).  *See* Appellee's Br. at 19-20.  Figuring out the amount subject to forfeiture may not always require "mathematical exactitude," *United States v. Al-Sharairei*, 130 F. 4th 656, 667 (8th Cir. 2025) (internal quotation marks and citation omitted), but the amount cannot be chosen arbitrarily by throwing a dart at a chart with numbers.

## IV

We vacate the district court's forfeiture order against Mr. Philossaint and remand further proceedings consistent with our opinion.

**VACATED AND REMANDED.**