**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13312
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

NIDAL AHMED WAKED HATUM,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:15-cr-20189-RNS-1

_____

Before NEWSOM, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

In 2017, Nidal Ahmed Waked Hatum ("Waked") pled guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957(a). As part of his guilty plea, Waked

admitted that on multiple occasions he borrowed money from a bank in Panama based on fraudulent representations, transferred that money into the United States and back to Panama through Florida-based corporations that he owned, and then repaid the money with interest to the Panamanian bank.

As part of Waked's sentence, the government sought a forfeiture money judgment for the total amount of money that he laundered. The district court denied the government's motion and refused to impose a forfeiture money judgment against Waked. The government appealed, and we reversed, holding that the district court was required to impose forfeiture under 18 U.S.C. § 982(a)(1). *United States v. Waked Hatum*, 969 F.3d 1156 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 72 (2021). However, we left it for the district court to (1) calculate in the first instance the amount of the forfeiture money judgment that it was required to impose, and (2) determine whether a judgment of that amount would be an excessive fine in violation of the Eighth Amendment. *Id.* at 1169.

On remand, the district court imposed a forfeiture money judgment of $10,426,000, the undisputed sum total of Waked's money laundering transactions. The district court also concluded that the judgment was not an excessive fine in violation of the Eighth Amendment. Waked appeals the forfeiture money judgment. After review,[1] we affirm.

---

[1] "We review the validity and scope of an appeal waiver *de novo*." *King v. United States*, 41 F.4th 1363, 1366 (11th Cir. 2022). "We review *de novo* the subject matter jurisdiction of the district court." *United States v. Mims*, 143 F.4th 1311,

## I. BACKGROUND[2]

In March 2015, Waked was indicted for, among other charges, conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957(a). In October 2017, Waked pled guilty to that charge pursuant to a plea agreement in exchange for the dismissal of the remaining charges.

In pleading guilty, Waked agreed to a proffer of the following facts. From approximately 2000 to 2009, Waked was the general manager of the Panamanian corporation Vida Panama, Z.L., S.A. ("Vida Panama") and the owner of two Miami-based corporations, Star Textile Manufacturing ("Star Textile") and Global World Import & Export ("Global World"). During that time period, on multiple occasions Waked drew from Vida Panama's line of credit at the International Bank of China ("ICBC") in Panama for sums of money ranging from approximately $22,000 to $550,000. Waked then transferred those funds via wire transfer to Star Textile and Global World at Ocean Bank in Miami.

---

1315 (11th Cir. 2025) (quotation marks omitted). "We review the factual findings underlying a forfeiture order for clear error, but we review any legal conclusions *de novo*." *United States v. Philossaint*, 141 F.4th 1334, 1339 (11th Cir. 2025). We review whether a fine is excessive under the Eighth Amendment *de novo*. *United States v. Schwarzbaum*, 127 F.4th 259, 275 (11th Cir. 2025).

[2] We limit our summary of this case's factual and procedural history to those facts that are directly relevant to this appeal. For a more complete summary of the background of this case, see our decision in the first appeal that arose from this case. *See Waked Hatum*, 969 F.3d at 1159-61.

In order to justify the credit draws and wire transfers, Waked claimed to ICBC that the purpose of the transfers was that Vida Panama was purchasing goods from Star Textile and Global World. Waked submitted invoices to ICBC in support of that representation. However, no such purchases occurred, and the invoices were fraudulent. If ICBC had known the truth, it would not have authorized the credit draws and wire transfers. Therefore, Waked admitted that the funds he transferred "were derived from fraud on a bank in Panama."

After transferring the funds to Star Textile and Global World in Florida, Waked arranged for those funds to be promptly deposited back in Vida Panama's bank account in Panama via check. Waked then repaid the credit draws to ICBC with interest, so ICBC did not suffer any net financial losses.

In the plea agreement, Waked agreed to negotiate with the government regarding the amount of money that would be subject to forfeiture, but he reserved the right to present arguments before the district court regarding forfeiture if they did not reach an agreement. Waked also agreed to waive his right to appeal any sentence the district court imposed with three exceptions: (1) if his sentence included an upward departure or variance, (2) if his sentence exceeded the statutory maximum, and (3) "if the United States exercise[d] its statutory rights to appeal."

The district court then entered a preliminary order of forfeiture, which stated that a forfeiture money judgment would

be imposed, with the amount to be determined at a later date under Fed. R. Crim. P. 32.2(b)(2)(C) and (e)(1).

In the presentence investigation report ("PSI") prepared for Waked's sentencing, the probation officer included additional details about Waked's offense conduct not contained in the factual proffer. As is relevant for this appeal, the PSI listed each of the transactions in which Waked drew funds from ICBC based on Vida Panama's credit line and transferred those funds to Star Textile and Global World. The PSI stated that, through these transactions, Waked transferred approximately $10,426,000 to Star Textile and Global World, all of which was sent back to Vida Panama and repaid to ICBC with interest. Waked objected to various facts in the PSI, but he did not specifically object to the $10,426,000 calculation.

The district court sentenced Waked to 27 months' imprisonment. The parties and the court agreed that they would address forfeiture after sentencing.

The district court ultimately rejected the government's request for a forfeiture money judgment and vacated the preliminary order of forfeiture. The court recognized that forfeiture was mandatory but decided not to impose any forfeiture money judgment against Waked because Waked returned the funds that he laundered to ICBC with interest. Additionally, the court stated that, if it was required to impose a forfeiture money judgment, the amount requested by the government—$20,852,000—was excessive under the Eighth Amendment. The

court explained that, because Waked returned all funds he borrowed from ICBC on Vida Panama's credit line with interest, the bank suffered little harm, and so a forfeiture money judgment of $10,000 per transaction, for a total of $520,000, would be appropriate.

The government appealed the district court's forfeiture ruling.

On appeal, we reversed the district court's forfeiture ruling and held that the district court erred by failing to impose mandatory forfeiture against Waked. *Waked Hatum*, 969 F.3d at 1162-67. Waked raised multiple arguments in support of the district court's decision not to impose forfeiture, all of which we rejected. Specifically, we held that (1) the district court was required to impose forfeiture against Waked based on his conviction under § 982(a)(1), (2) § 982(a)(1) permitted forfeiture money judgments, and (3) the money that Waked laundered was property "involved in" his laundering scheme that was subject to forfeiture. *Id.* at 1162-65.

In reaching the third holding, we concluded that (1) it was not "impermissible double counting" to impose forfeiture against Waked even though he returned all of the laundered funds to ICBC; (2) it did not matter that the funds were technically possessed by Vida Panama, not Waked, because Waked had sufficient personal interest in the funds as Vida Panama's general manager; and (3) the requirement in *Honeycutt v. United States*, 581 U.S. 443 (2017), that property must be "tainted" to be forfeitable

did not apply to this case because that decision concerned 21 U.S.C. § 853(a), while this case was based on § 982(a)(1). *Id.* at 1164-65. We also held that the government could seek substitute asset forfeiture under § 853(p) even though the "third party" to whom Waked transferred the laundered money was the victim, ICBC. *Id.* at 1166.

After holding that the district court erred by failing to impose forfeiture against Waked, we then held that the district court also erred in holding that a fine of $10,000 per transaction was the constitutional ceiling for a forfeiture judgment under the Eighth Amendment. *Id.* at 1167-69. Applying the factors for the Eighth Amendment analysis, we first concluded that Waked was within the class of persons whom the money laundering statutes were meant to cover. *Id.* at 1167.

We then stated that the maximum fine for Waked's money laundering conviction was twice the amount of money "involved in" his offense, which appeared to be $20,852,000, *i.e.*, twice the amount of the total transferred funds as listed in the PSI. *Id.* at 1167-68. However, we noted that the district court did not make the necessary findings of fact as to the proper forfeiture amount, so we could not determine whether that was the correct statutory maximum. *Id.* at 1168. Lastly, we explained that the district court erred by only considering the direct economic harm that ICBC suffered as a result of Waked's scheme because the court should have looked "beyond the impact on [ICBC's] bottom line when considering whether Mr. Waked's conduct was harmful." *Id.* at

1168-69.    Specifically, we stated that the court should have considered the general harm to society that money laundering causes.  *Id.* at 1169.

Based on the above holdings, we remanded for the district court in the first instance to (1) engage in the necessary factfinding to calculate the proper amount for the forfeiture money judgment, and (2) determine whether that judgment would be an excessive fine under the Eighth Amendment.[3]  *Id.*

On remand, the government moved for an amended preliminary order of forfeiture, which the district court granted on January 13, 2022.  Pursuant to our opinion in the government's appeal, the district court determined that it was required to impose a forfeiture money judgment against Waked.  The court calculated that the money judgment should be for $10,426,000 because that was the unobjected-to total amount of Waked's laundering transactions as stated in the PSI.  The court then scheduled a date for a separate hearing to address Waked's objections to the forfeiture judgment under the Eighth Amendment.

On September 16, 2022, the district court entered a "Final Order of Forfeiture" in which it confirmed its imposition of the $10,426,000 forfeiture money judgment.[4]  The court again

---

[3] Waked petitioned for a writ of *certiorari* before the Supreme Court, which the Court denied.  *Waked Hatum v. United States*, 142 S. Ct. 72 (2021).

[4] Although the district court titled the order as the "Final Order of Forfeiture," the order was not the type of "final order of forfeiture" that Fed. R. Crim. P.

22-13312                Opinion of the Court                    9

concluded that $10,426,000 was the correct amount for the forfeiture money judgment because that was the amount of money that Waked laundered as part of his offense.

Then, applying the appropriate factors, the court determined that the forfeiture money judgment was not an excessive fine under the Eighth Amendment. First, the court stated that Waked was within the class of persons whom the money laundering statutes intended to cover, as we concluded in the government's appeal. Second, the court stated that the amount of the money judgment was well below the maximum penalty authorized by Congress. The court stated that under 18 U.S.C. § 1957(b)(2), the maximum fine it could impose was twice the amount of the criminally derived property involved in the laundering transactions. Because Waked laundered a total of $10,426,000, the maximum fine was $20,852,000, and so the amount of the money judgment was well below the authorized statutory maximum fine. Lastly, the court stated that the amount of the forfeiture money judgment was appropriate in light of the harm that Waked's laundering scheme caused. Although Waked's laundering caused little to no economic harm to ICBC, the court explained that it caused harm to society generally.

Waked then filed a notice of appeal challenging the forfeiture money judgment.

---

32.2(c)(2) states should be entered after ancillary forfeiture proceedings are completed.

On appeal, Waked initially argued, among other things, that the district court's forfeiture judgment was jurisdictionally defective because the court did not amend the sentencing judgment to include the remand forfeiture order. In response, prior to filing its appellate merits brief, the government moved to stay the appeal, which we granted, and then moved the district court to enter an amended sentencing judgment that incorporated the remand forfeiture order.

Over Waked's objection, the district court granted the government's motion and on October 18, 2024, entered an amended sentencing judgment that incorporated the remand forfeiture order. The court concluded that it was permitted to amend the sentencing judgment under Fed. R. Crim. P. 36 because its failure to incorporate the remand forfeiture order into the sentencing judgment was a clerical error that it could resolve immediately even though Waked's appeal was pending.

## II. DISCUSSION

Waked challenges the district court's imposition of the forfeiture money judgment against him on seven grounds. He first argues that the district court lacked jurisdiction to enter the amended sentencing judgment that incorporated the remand forfeiture order because this appeal was already pending at that time. Second, he argues that there was no factual basis to support the forfeiture money judgment. Third, he argues that the district court's calculation of the forfeiture money judgment constituted impermissible double counting. Fourth, he argues that the district

court could not impose substitute asset forfeiture against him. Fifth, he argues that the district court could not impose forfeiture against him because he never personally received the funds that he laundered. Sixth, he argues that the forfeiture money judgment was an excessive fine under the Eighth Amendment. And lastly, he argues that the district court was not authorized under the forfeiture statute to impose a forfeiture money judgment.

In response, the government argues that we should dismiss this appeal because it is barred by the sentence-appeal waiver contained in Waked's plea agreement. We address each issue in turn.

## A. Threshold Issues

Before reaching the merits of Waked's appeal, we address the two threshold issues that the parties raise: whether this appeal is barred by a sentence-appeal waiver, and whether the district court had jurisdiction to amend the sentencing judgment to include the remand forfeiture order.

### 1. Sentence-Appeal Waiver

The government argues that we should not reach the merits of Waked's appeal because we should enforce the sentence-appeal waiver contained in the plea agreement. It acknowledges that it appealed Waked's sentence when the district court initially refused to impose forfeiture, but it asserts that its prior appeal did not release Waked from the waiver as to his new sentence imposed on remand.

Sentence-appeal waivers that are made knowingly and voluntarily must be enforced if they are raised by the government. *King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022). Plea agreements are like contracts between the government and criminal defendants, and so such agreements "must be construed according to the intent and reasonable expectation of the parties." *Id.*

We disagree with the government that Waked's sentence-appeal waiver bars his appeal of the forfeiture money judgment imposed on remand. The plea agreement states that Waked agreed to waive his right to appeal any sentence that the district court imposed unless, among other exceptions, "the United States exercises its statutory rights to appeal." The plea agreement does not specify whether the waiver remains effective if (1) the government successfully appeals Waked's sentence, (2) the district court resentences Waked on remand, and (3) the government does not appeal Waked's new sentence. The language of the plea agreement is ambiguous on this issue, and "ambiguities in plea agreements should be resolved against the government." *Allen v. Thomas*, 161 F.3d 667, 671 (11th Cir. 1998).

Construing the ambiguity in Waked's favor, we read the plea agreement to state that if the government appeals, Waked is no longer barred from appealing his sentence, including if he is resentenced on remand after an earlier successful appeal by the government. *See United States v. Vazquez*, 558 F.3d 1224, 1227 (11th Cir. 2009) (holding that a sentence-appeal waiver did not bar a

defendant from appealing his sentence after he was resentenced on remand from a successful appeal by the government because the plea agreement, which stated that the defendant was released from the waiver if the government appealed "the sentence imposed," was ambiguous, and any ambiguity should be construed in the defendant's favor), *vacated and remanded on other grounds*, 558 U.S. 1144 (2010).   Therefore, we may reach the merits of Waked's appeal.

### 2. District Court's Jurisdiction

Waked argues as a threshold matter that the district court lacked jurisdiction to enter the October 18, 2024, amended sentencing judgment to incorporate the remand forfeiture order because this appeal was already pending at that time.  He asserts that the district court was divested of jurisdiction to amend the sentencing judgment when he filed his notice of appeal, so it was not authorized to amend the judgment as the government requested.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  However, this principle does not prevent a district court from amending a judgment to fix a clerical error pursuant to Fed. R. Crim. P. 36 while an appeal is pending. *United States v. Pease*, 331 F.3d 809, 816 (11th Cir. 2003) ("It is settled law that the appeal of a judgment in a criminal case deprives the district

court of jurisdiction to amend the judgment (except for clerical errors pursuant to Rule 36)."), *superseded by rule on other grounds*, Fed. R. Crim. P. 32.2 (2009).

Although Waked's notice of appeal that he filed after the September 16, 2022, forfeiture order generally divested the district court of jurisdiction over the case, the court did not lack jurisdiction to amend the sentencing judgment to incorporate the remand forfeiture order. *See Griggs*, 459 U.S. at 58. Rule 32.2 of the Federal Rules of Criminal Procedure requires that a district court include any forfeiture order imposed in the case in the judgment. Fed. R. Crim. P. 32.2(b)(4)(B); *see also United States v. Petrie*, 302 F.3d 1280, 1284 (11th Cir. 2002) (stating that Rule 32.2 "requires that the forfeiture order be made a part of the sentence and included in the judgment"). However, Rule 32.2 also provides that the failure to include a forfeiture order in the judgment is an error that "may be corrected at any time under Rule 36." Fed. R. Crim. P. 32.2(b)(4)(B). Rule 36 allows a district court to "at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36.

Under Rule 32.2(b)(4)(B), the district court's failure to incorporate the remand forfeiture order into the sentencing judgment was a clerical error that could be corrected at any time under Rule 36. *See* Fed. R. Crim. P. 32.2(b)(4)(B), 36. The district court therefore had jurisdiction to amend the sentencing judgment as it did even though Waked had already filed a notice of appeal

because the filing of a notice of appeal does not divest the district court of jurisdiction to correct clerical errors under Rule 36.[5] *See Pease*, 331 F.3d at 816.

### B. Merits Challenges to the Forfeiture Money Judgment

We next turn to the merits of Waked's various arguments challenging the validity of the forfeiture money judgment.

### 1. Factual Basis for the Forfeiture Judgment

First, Waked argues that there was an insufficient factual basis to support the imposition of the forfeiture money judgment. Specifically, he asserts that there was no basis in the record to support the conclusion that he was responsible for any substantive violations of the money laundering statutes such that any of the funds that he transferred from Vida Panama to Star Textile and Global World were "involved in" any money laundering offense and so forfeitable under § 982(a)(1). He reasons that (1) the government failed to establish that any of the credit draws from ICBC constituted bank fraud under Panamanian or U.S. law, and (2) the credit draws could not constitute bank fraud because ICBC did not suffer any net economic loss as a result of the transactions.

---

[5] In *Pease*, we held that a district court lacked jurisdiction to amend a sentencing judgment to include a forfeiture order that was inadvertently omitted because an appeal was pending. 331 F.3d at 815-17. However, *Pease* was decided before Rule 32.2 was amended to clarify that amending a judgment to include an omitted forfeiture order was a correction of a clerical error under Rule 36. *See* Fed. R. Crim. P. 32.2(b)(4)(B) (2009). Therefore, that holding in *Pease* was superseded by the amended Rule 32.2.

Waked also argues that the district court erred by relying on the PSI's calculation that he transferred a total of $10,426,000 from Vida Panama to Star Textile and Global World in determining the amount of the forfeiture money judgment.

Waked did not raise any of these arguments before the district court, so we review them for plain error. *See United States v. Malone*, 51 F.4th 1311, 1318-19 (11th Cir. 2022) ("We find plain error when (1) an error has occurred, (2) the error was plain, and (3) it affected the defendant's substantial rights, and if those prongs are met, we then have discretion to correct the error if it (4) seriously affected the fairness of the judicial proceedings.").

Under 18 U.S.C. § 982(a)(1), a district court must order a person who has been convicted of an offense in violation of 18 U.S.C. §§ 1956 or 1957 to forfeit to the government "any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). Waked pled guilty to a conspiracy to violate 18 U.S.C. § 1957(a), which criminalizes "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 [that] is derived from specified unlawful activity." 18 U.S.C. § 1957(a); *see also* 18 U.S.C. § 1956(h) (criminalizing conspiring to violate § 1957). "Specified unlawful activity" includes any offense against a foreign nation involving "fraud, or any scheme or attempt to defraud . . . a foreign bank" that occurred in whole or in part in the United States. 18 U.S.C. §§ 1957(f)(3), 1956(c)(7)(B)(iii).

Waked has not shown that the district court plainly erred by failing to conclude that there was no factual basis for the imposition of the forfeiture money judgment against him under § 982(a)(1). In pleading guilty, Waked admitted that he borrowed funds from ICBC via Vida Panama's credit line by falsely representing to ICBC that those funds would be used to purchase goods from Star Textile and Global World. Waked also admitted that the funds were derived from bank fraud on ICBC and that he transferred the funds into and out of the United States through Star Textile and Global World. The district court could rely on these admissions to conclude that Vida Panama's credit draws from ICBC based on fraudulent misrepresentations constituted fraud sufficient to trigger mandatory forfeiture under § 982(a)(1). *See United States v. Evans*, 958 F.3d 1102, 1109 (11th Cir. 2020) (stating that a sentencing court may base its factual findings on, among other things, "facts admitted by a defendant's plea of guilty" (quotation marks omitted)). Waked does not cite to any legal authority supporting his argument on this ground, so he has failed to establish plain error. *See United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012) ("In order for an error to be obvious for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." (quotation marks omitted)).

Waked has also not shown that the district court plainly erred by failing to conclude *sua sponte* that the government needed to prove that ICBC suffered a net economic loss as a result of his credit draws to trigger mandatory forfeiture under § 982(a)(1). The

Supreme Court has held that certain federal fraud statutes do not require that the victim suffer a net economic loss. *See Shaw v. United States*, 580 U.S. 63, 67-68 (2016) (holding that the federal bank-fraud statute, 18 U.S.C. § 1344, does not require that the victim suffer an ultimate financial loss); *Kousisis v. United States*, 605 U.S. 114, 123-35 (2025) (holding that the federal wire-fraud statute, 18 U.S.C. § 1343, does not require that the victim suffer a net economic loss). Given that Waked's argument is inconsistent with relevant Supreme Court precedent, and Waked has not cited to any binding precedent in support of his argument, Waked has failed to establish plain error.[6] *See Johnson*, 694 F.3d at 1195.

Lastly, the district court did not err, let alone plainly err, by relying on the PSI to calculate the amount of the forfeiture money judgment. Forfeiture is part of a defendant's sentence, and facts not objected to in the PSI are admitted for purposes of sentencing. *See Libretti v. United States*, 516 U.S. 29, 39 (1995) ("Our precedents have . . . characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense."); *United States v. Gilbert*, 244 F.3d 888, 924 (11th

---

[6] Additionally, to the extent that Waked argues that the district court erred by imposing the forfeiture money judgment based on his laundering transactions, such an argument is foreclosed by the law of the case doctrine because we explicitly held in the government's appeal that the district court was required to impose a forfeiture money judgment based on those transactions. *See Waked Hatum*, 969 F.3d at 1162-67; *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case.").

Cir. 2001) ("It is beyond doubt that criminal forfeiture is part of a defendant's sentence."), *superseded by rule on other grounds as recognized in United States v. Marion*, 562 F.3d 1330, 1340-41 (11th Cir. 2009); *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."). Therefore, in calculating the amount of the forfeiture money judgment, the district court could rely on the unobjected-to fact in the PSI that Waked transferred a total of $10,426,000 to Star Textile and Global World in the laundering transactions to which he admitted as part of his guilty plea.

Waked asserts that the district court could not rely on that unobjected-to calculation in the PSI because (1) the PSI merely addressed relevant conduct that was only pertinent to sentencing, not forfeiture, and (2) the PSI did not include any forfeiture calculations or conclusions about the scope of forfeiture. However, those arguments are inconsistent with the above-cited law, and, regardless, Waked does not cite to any binding precedent in support of his arguments. Therefore, Waked has failed to establish plain error. *See Johnson*, 694 F.3d at 1195.

### 2. Double Counting

Next, Waked argues that the district court engaged in impermissible double counting when it calculated the amount of the forfeiture money judgment. He asserts that, because he acquired all of the money that he laundered by drawing on Vida Panama's single credit line at ICBC, the total amount of money

"involved in" his laundering offense was not the total aggregated amount of money that he transferred through his laundering transactions, but rather was limited to the largest single amount of money that he ever borrowed from ICBC based on Vida Panama's credit line, which was a "static pool of funds." Waked reasons that his credit draws and subsequent laundering transactions constituted a "repeated utilization of the same fungible property," which was like "repeatedly borrowing and returning the same bar of gold."

The property that is subject to forfeiture under § 982(a)(1) includes "the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense." *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003) (quotation marks omitted). In this case, the government is seeking the "corpus" of funds that Waked laundered. *Waked Hatum*, 969 F.3d at 1163.

Waked is incorrect that the district court engaged in impermissible double counting. Waked's various laundering transactions were not limited to a single "static pool of funds." On multiple separate occasions, Waked borrowed money from ICBC based on Vida Panama's credit line and then returned the borrowed funds to ICBC with interest. Each credit draw was a discrete transaction with ICBC to borrow an amount of money separate from the funds that he borrowed on other occasions. Each of Waked's separate laundering transactions thus involved a discrete, separate amount of money, even if each was derived from

the same source—Vida Panama's credit line. Therefore, Waked's multiple laundering transactions did not constitute a "repeated utilization of the same fungible property."

However, even if Waked's analogy comparing his credit draws and repayments to the borrowing and returning of a single gold bar was apt, which it is not, he would still not be entitled to reversal of the forfeiture money judgment. Under § 982(a)(1), the district court was required to order forfeited all "money or other property" that Waked "laundered," which includes the aggregated amount of all of his laundering transactions. *See Puche*, 350 F.3d at 1153; 18 U.S.C. § 982(a)(1).

In *United States v. Martin*, we rejected a similar argument in reviewing a district court's calculation of the total amount of money for which a defendant convicted of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) was accountable for purposes of determining the defendant's sentencing guideline base offense level under U.S.S.G. § 2S1.1. 320 F.3d 1223, 1225-26 (11th Cir. 2003). On multiple separate occasions, the defendant laundered funds that he derived from a single stolen check in transactions whose aggregate amount exceeded the original check amount. *Id.* at 1226. The defendant argued that he should not be held accountable for an amount greater than the value of the single check. *Id.*

We rejected the defendant's argument and concluded that the district court correctly calculated the amount for which the defendant was accountable by aggregating the amount of each

individual transaction. *Id.* at 1226-27. We explained that "money laundering is not a continuing offense" because "each transaction or transfer of money constitutes a separate offense" and cited to a persuasive case in which a district court rejected a similar argument. *Id.* (quotation marks omitted) (citing *United States v. Li*, 973 F. Supp. 567, 574 (E.D. Va. 1997) ("It does not make sense to look only at the amount of capital injected or infused into the money laundering scheme, as [defendant] suggests, and ignore what happens to that capital. Clearly, the magnitude of the criminal enterprise is larger for a conspiracy involving a hundred unlawful transfers of $100 or $99 compared to a conspiracy involving one unlawful transfer of $100." (quotation marks omitted))). We reasoned that because "[e]ach unlawful monetary transaction harms society by impeding law enforcement's efforts to track ill-gotten gains," the district court did not err by aggregating the total amount of each individual transaction even though that total was greater than the value of the single check that was the source of all of the laundered funds. *Id.* at 1227.

Although *Martin* is procedurally distinct from this case, its reasoning is highly relevant. The district court did not err in calculating the amount of the forfeiture money judgment by aggregating all of Waked's laundering transactions.

### 3. Arguments Rejected in the Prior Appeal

Waked also raises multiple arguments that we rejected in the government's earlier appeal. Specifically, he argues that (1) substitute asset forfeiture is unavailable in this case because his

22-13312                Opinion of the Court                23

return of the laundered funds did not constitute transference to a third party under 21 U.S.C. § 853(p)(1)(B);[7] (2) the district court should not have ordered forfeiture against him based on the funds that he laundered because he never personally received those funds; and (3) the relevant forfeiture statute does not permit the imposition of forfeiture money judgments.

Waked is barred from relitigating these issues pursuant to the law of the case doctrine. *See United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."); *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) ("Under the law of the case doctrine,

---

[7] Additionally, Waked argues that the government abandoned the right to seek substitute asset forfeiture against him because it failed to do so before the district court during the remand forfeiture proceedings. Waked is incorrect because "at any time" the government can request the district court to amend the preexisting forfeiture order to include any property subject to substitute forfeiture. *See* Fed. R. Crim. P. 32.2(e)(1)(B) ("On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is substitute property that qualifies for forfeiture under an applicable statute."); *see also United States v. Misla-Aldarondo*, 478 F.3d 52, 75 (1st Cir. 2007) ("[A] court may properly issue a money judgment as part of a forfeiture order, whether or not the defendant still retains the actual property involved in the offense, or any property at all. Furthermore, the money judgment can be used in the future to seek forfeiture of substitute assets by court order under § 853(p) and Rule 32.2, *even where the government has not expressed an intent to do so at any time before it seeks such an order*." (emphasis added)).

the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal. . . . The doctrine's central purposes include bringing an end to litigation, protecting against the agitation of settled issues, and assuring that lower courts obey appellate orders." (quotation marks omitted)).

In the government's earlier appeal, we explicitly held in a published, precedential opinion that (1) the government could seek substitute forfeiture under § 853(p) because Waked's transference of the laundered funds to ICBC satisfied § 853(p)(1)(B); (2) it did not matter that Waked never personally received the laundered funds because he had a strong personal interest in the funds; and (3) the district court was permitted to, and in fact was required to, impose a forfeiture money judgment against Waked. *Waked Hatum*, 969 F.3d at 1163-67. Additionally, none of the exceptions to the law of the case doctrine apply here. *See United States v. Anderson*, 772 F.3d 662, 668-69 (11th Cir. 2014) ("There are limited exceptions to the law-of-the-case doctrine: where there is new evidence, an intervening change in controlling law dictates a different result, or the appellate decision, if implemented, would cause manifest injustice because it is clearly erroneous." (quotation marks omitted and alteration adopted)). Accordingly, we will not address these arguments again. *See also United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (stating that under the prior-panel precedent rule "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.").

## C. Eighth Amendment

Lastly, Waked argues that the district court erred by concluding that the $10,426,000 forfeiture money judgment was not an excessive fine under the Eighth Amendment. He asserts that "the forfeiture bore no relationship to the underlying criminal law concerns and significantly exceeded the harm at issue given the actual fungible amount involved and the complete absence of any loss."

"Forfeitures are subject to the Eighth Amendment's prohibition against excessive fines if they constitute punishment for an offense." *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007) (quotation marks omitted). "Subject forfeitures violate the Excessive Fines Clause if they are grossly disproportional to the gravity of the defendant's offense." *Id.* (quotation marks omitted). In determining whether a fine is excessive under the Eighth Amendment, we examine three factors: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *Id.* (citing *United States v. Bajakajian*, 524 U.S. 321, 337-40 (1998)).

As to the first factor, we already decided in the first appeal that Waked is within the class of persons whom the money laundering statutes were intended to cover, and Waked does not dispute that conclusion. *Waked Hatum*, 969 F.3d at 1167.

As to the second factor, the maximum penalty that Congress and the Sentencing Commission authorized for Waked's § 1957 conspiracy conviction is $20,852,000—twice the amount of funds that the district court properly concluded were involved in Waked's laundering transactions.    *See* 18 U.S.C. § 1956(h) (providing that a defendant convicted of conspiracy to violate § 1957 "shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."); *id.* § 1957(b)(2) (authorizing a fine "of not more than twice the amount of the criminally derived property involved in the transaction"); U.S.S.G. § 5E1.2(c)(4) (providing that the maximum of the fine guideline range for defendants convicted under statutes that authorize a maximum fine of greater than $500,000 is the statutory maximum fine).    The fact that the $10,426,000 forfeiture money judgment is well below the statutory maximum fine that the district court could have imposed is a consideration that we give "great weight" to.[8]    *See United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011) ("Congress, as a representative body, can distill the monetary value society places on harmful conduct; forfeitures falling below the maximum statutory fines for a given offense therefore receive a strong presumption of constitutionality." (quotation marks omitted)).    It is also significant that the statutory maximum sentence that the

---

[8] The district court did not impose any other fines against Waked as part of his sentence other than the standard $100 assessment.

district could have imposed on Waked for his money laundering offense was 10 years' imprisonment.  18 U.S.C. § 1957(b)(1).

As to the third factor, while it is uncontested that ICBC did not suffer any net economic harm from Waked's actions, Waked's laundering caused some harm to society generally.

In *Martin*, we rejected the defendant's argument that the district court erred by aggregating the total sum of his laundering transactions even though that sum was greater than the value of the single stolen check that was the sole source of the laundered funds.  320 F.3d at 1225-27.  We reasoned that the purpose of the money laundering statute under which the defendant was convicted, 18 U.S.C. § 1956(a)(1)(B)(i), was "to punish defendants who, after the completion of the underlying specified unlawful activity, take the additional step of attempting to legitimize their proceeds so that observers think their money is derived from legal enterprises."  *Id.* at 1226-27 (quotation marks omitted).  We also stated that the harm caused by money laundering "does not generally fall upon an individual, but falls upon society in general," and "[e]ach unlawful monetary transaction harms society by impeding law enforcement's efforts to track ill-gotten gains."  *Id.* at 1227 (quotation marks omitted).  Based on these general principles, it is clear that Waked's actions in transferring money that he undisputedly acquired through bank fraud into the United States and then back to Panama via two Florida-based corporations caused at least some harm to society.

In *United States v. Bajakajian*, the Supreme Court considered whether a forfeiture award was an unconstitutionally excessive fine in violation of the Eighth Amendment. 524 U.S. at 324. In that case, the defendant pled guilty to failure to report that he was transporting more than $10,000 outside of the United States, in violation of 31 U.S.C. § 5316(a). *Id.* at 324-25. The defendant had attempted to transport a total of $357,144 outside of the United States without reporting it to customs inspectors. *Id.* The government sought forfeiture of the entire $357,144 based on 18 U.S.C. § 982(a)(1). *Id.* at 325. The district court rejected the government's request because the funds were not connected to any other crime, and therefore the government's requested forfeiture would be "extraordinarily harsh" and "grossly disproportionate to the offense in question." *Id.* at 325-26. Instead, the court ordered forfeiture of $15,000 in addition to 3 years of probation and a fine of $5,000. *Id.* at 326. The government appealed, seeking full forfeiture of the relevant funds. *Id.*

The Supreme Court held that the full forfeiture of the relevant funds would be an excessive fine under the Eighth Amendment. *Id.* at 334-44. First, the Court reasoned that the defendant did not fit into the class of persons for whom the forfeiture statute was principally designed because he was not "a money launderer, a drug trafficker, or a tax evader." *Id.* at 337-38 (footnote omitted). Second, the Court noted that the maximum fine that the district court could have imposed under the Sentencing Guidelines was only $5,000, which was significantly lower than the government's requested forfeiture of $357,144. *Id.*

at 338-39.  Lastly, the Court concluded that the harm that the defendant caused was minimal because he was guilty of a mere reporting offense that only caused relatively minor harm to the government.  *Id.* at 339.

In this case, while the harm that Waked caused by his laundering transactions was not necessarily as severe as the harm caused by the defendant in *Martin*, given that the defendant in that case did not return the laundered money that he stole from the victim voluntarily, the harm Waked caused was more severe than that caused by the defendant in *Bajakajian*.  *See Waked Hatum*, 969 F.3d at 1169 (distinguishing this case from *Bajakajian* and comparing it to *Martin*); *Bajakajian*, 524 U.S. at 337-39.  Waked did not commit a mere reporting offense when he laundered a total of $10,426,000 into and out of the United States, and the money involved in his laundering scheme was directly connected to criminal activity—bank fraud against ICBC.  Unlike the defendant in *Bajakajian*, Waked is exactly the type of person for whom the Supreme Court stated the forfeiture statute was principally designed—a money launderer.[9]  *See Bajakajian*, 524 U.S. at 337-38.

---

[9] Waked relies primarily on the unpublished decision in *United States v. Ramirez*, 421 F. App'x 950 (11th Cir. 2011), which, like *Bajakajian*, involved a defendant who committed a mere reporting offense with funds unrelated to any other criminal activity.  That unpublished decision is not precedential.  *See United States v. Morris*, 131 F.4th 1288, 1293 n.3 (11th Cir. 2025).  Regardless, *Ramirez* does not support Waked's argument because that decision is distinguishable from this case for the same reasons that *Bajakajian* is

Applying all of the relevant factors, we conclude that the district court did not err by determining that the $10,426,000 forfeiture money judgment was not an unconstitutional fine in violation of the Eighth Amendment.  Waked has failed to show that the forfeiture judgment was grossly disproportional to the gravity of his offense, especially in light of the highly significant fact that, unlike in *Bajakajian*, the amount of the forfeiture money judgment is well below the statutory maximum fine the district court could have imposed.  *See United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1310 (11th Cir. 1999) ("[A]lthough we retain a duty under the Eighth Amendment independently to examine fines for excessiveness, a defendant would need to present a very compelling argument to persuade us to substitute our judgment for that of the United States Sentencing Commission. Thus, in a forfeiture action, if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive."); *United States v. Schwarzbaum*, 127 F.4th 259, 284 (11th Cir. 2025) (stating that the presumption that a fine is not constitutionally excessive under the Eighth Amendment "is particularly strong when the specific penalty sought by the Government is less than the statutory maximum").

---

distinguishable.  *See Waked Hatum*, 969 F.3d at 1169 (distinguishing this case from both *Ramirez* and *Bajakajian*).

## III.  CONCLUSION

The district court did not err by imposing the $10,426,000 forfeiture money judgment against Waked.  The court also did not err by concluding that the forfeiture judgment was not an unconstitutionally excessive fine under the Eighth Amendment. Accordingly, we affirm the forfeiture money judgment.

**AFFIRMED.**